UNITED STATES, Appellee

v.

Maurice HAMILTON, Airman Basic
U.S. Air Force, Appellant.

No. 93–0654.
CMR No. 28588.

U.S. Court of Military Appeals.

Argued March 17, 1994.

Decided Sept. 23, 1994.

Certiorari Denied Jan. 9, 1995.

See 115 S.Ct. 738.

For Appellant: *Captain Robert E. Watson* (argued); *Colonel Jay L. Cohen* (on brief); *Colonel Terry J. Woodhouse, Lieutenant Colonel Frank J. Spinner, Major George F. May.*

For Appellee: *Captain Jane L. Harless* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Thomas E. Schlegel* (on brief); *Colonel Richard L. Purdon* and *Captain Carlos L. McDade.*

*Opinion of the Court*

WISS, Judge:

Appellant was tried by a general court-martial composed of officer members at Soesterberg Air Base, The Netherlands, in January and February 1990. Contrary to his pleas, he was found guilty of five specifications of writing bad checks totaling in excess of $9300, in violation of Article 123a, Uniform Code of Military Justice, 10 USC § 923a. He was sentenced to a dishonorable discharge, confinement for 24 months, and total forfeitures. On May 4, 1990, the convening authority approved the sentence as adjudged. The Court of Military Review affirmed in an unpublished opinion.

This Court granted review on the following issues:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING APPELLANT'S CHALLENGES FOR CAUSE AGAINST THREE COURT MEMBERS WHO HAD ATTORNEY/CLIENT RELATIONSHIPS WITH THE ASSISTANT TRIAL COUNSEL.

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING TRIAL DEFENSE COUNSEL'S MOTION FOR MISTRIAL OR MOTION TO DISQUALIFY ASSISTANT TRIAL COUNSEL.

We hold that the military judge did not abuse his discretion in denying defense challenges for cause against three members who had been past legal assistance clients of the assistant trial counsel. Similarly, we hold that the judge did not abuse his discretion in denying defense motions for a mistrial and disqualification of the assistant trial counsel who had an innocuous social conversation with the court president, because the judge granted a defense challenge for cause and removed that officer from the panel.

FACTS

During *voir dire*, three members voluntarily disclosed that Captain Copley, the assistant trial counsel, had provided legal assistance to them. Lieutenant Colonel (LtCol) Smith stated that Capt. Copley had provided him income tax advice regarding his personal finances and rental property. Capt. Davis stated that assistant trial counsel had provided him legal assistance twice—drafting a will and assisting with a personal matter concerning some stateside correspondence relating to Capt. Davis and his wife. Capt. Walker apparently had the most professional contact with Capt. Copley. Capt. Copley had written a letter relating to Capt. Walker's state tax problem. Additionally, Capt. Copley had advised Capt. Walker on command military justice matters, but none of the cases had involved financial irresponsibility or bad-check offenses.

Each member freely disclosed these matters in response to initial questions by trial counsel and brief follow-up questions by the defense. As each matter of legal assistance had been completed, none of the members had a continuing attorney-client relationship with assistant trial counsel. Additionally, each member asserted that any contact with assistant trial counsel did not cause the member to view him as more "believable" or to "look more favorably" on the prosecution.

Trial defense counsel challenged these three members for cause "because of legal assistance provided them by Captain Copley. . . ." Appellant asserted that these members' entrusting legal assistance matters to Capt. Copley would cause them to give assistant trial counsel's argument "more credence."

Initially, the military judge denied the defense challenge for cause, finding no "grounds for disqualification based on the mere isolated contact they've had with assistant trial counsel." However, at the request of trial counsel, the military judge recalled Capt. Davis. At this point Capt. Davis disclosed that when assistant trial counsel had been the base tax advisor, Capt. Davis' wife had "worked as one of the tax assistants,"

and her work had brought her into contact with Capt. Copley. Additionally, Capt. Davis disclosed that Capt. Copley had provided tax advice to him and his wife regarding a tax audit during the summer of 1988. Capt. Davis again stated that there was no continuing attorney client-relationship and that he viewed assistant trial counsel "as a competent attorney." He reaffirmed that he did not view assistant trial counsel as more believable and would not favor the prosecution.

At this point the military judge again found that Captain Davis was neither biased nor prejudiced in favor of assistant trial counsel and denied the defense challenge. The defense then exercised a peremptory challenge against Capt. Walker; however, the military judge refused to grant the defense additional peremptory challenges. The trial began but a later development required the judge again to address another but unrelated issue regarding the court-martial service of the original president of the court.

On January 31, 1990, shortly before the conclusion of the defense case on the merits, the court recessed for the evening. During the overnight recess, assistant trial counsel went to the officer's club where he met Capt. Marlow, a reserve officer attached to the base legal office. The two lawyers conversed with the base commander, LtCol Smith, about legal matters unrelated to appellant's case. At some point, LtCol Modica, the president of appellant's court-marital, entered the club and sat at the bar near assistant trial counsel and Capt. Marlow. Eventually, LtCol Smith, Capt. Marlow, and assistant trial counsel engaged LtCol Modica in conversation that lasted between 1 and 1½ hours.

There is no need to detail the full scope of this conversation that eventually covered a variety of legal topics relating to military justice—for example, the duties of a traveling circuit counsel, licensing procedures for lawyers, and legal ethics, including defense counsel's ethical obligation when representing a client that counsel knows is guilty. At one point Capt. Marlow mentioned the movie, "And Justice for All," wherein a lawyer "declare[d] in court that his client was guilty," as an example of a lawyer's breach of client confidences that could "lead to disciplinary action against" the lawyer. Appellant's court-martial was not mentioned except for the duty stations of the lawyers assigned to the case and the fact that LtCol Smith's wife was serving as a court member. There was no discussion about other courts-martial or other trials. Although assistant trial counsel was a limited participant in the conversation, after about an hour, he became "uncomfortable" with the conversation discussing attorneys and left the club.

On the morning of February 1, 1990, assistant trial counsel brought these matters to the attention of trial counsel. Trial counsel immediately invited the military judge's attention to "a potential matter involving the president of the court and ... some conversations he may have had last night." The military judge convened a session under Article 39(a), UCMJ, 10 USC § 839(a), to explore this matter and to develop the factual predicate on the record. Assistant trial counsel and Capt. Marlow each testified about their conversation with LtCol Modica. Finally, the military judge and both counsel conducted *voir dire* of LtCol Modica on the matter.

At the conclusion of the testimony, defense counsel presented three independent and consecutive motions. First, the defense moved for a mistrial. The military judge denied this motion, stating simply that there was no showing of "a manifest injustice committed" in the proceedings. Second, defense counsel moved to disqualify the assistant trial counsel from further participation in this case because of his conversation with LtCol Modica. Defense counsel asserted that the defense specifically desired LtCol Modica to remain on the panel. The military judge denied this motion, also stating there was no "grounds for disqualification" of assistant trial counsel. Finally, the defense challenged LtCol Modica for cause, asserting the conversation that included legal ethics tainted the court president and created an appearance of impropriety. Arguing that the events did not present grounds for a causal challenge, trial counsel, nonetheless, requested the judge to grant the challenge "in an

abundance of caution...." Relying heavily on the government request, the military judge granted the challenge for cause, notwithstanding his finding of no improper communication between assistant trial counsel and the president of the court. The case then proceeded to its conclusion.[1]

The Court of Military Review concluded that the military judge did not abuse his discretion in denying three and granting only one of the defense challenges for cause and in denying the motion for a mistrial. Unpub. op. at 4. However, the court did "urge counsel to be vigilant in their efforts to avoid social contact with court members while a court-martial is in progress...." Unpub. op. at 4 n*. We agree with the Court of Military Review's decision and its sound admonition to counsel concerning social contact with court members.

## DISCUSSION

■ When a litigant challenges a member for cause on the general ground of "having the court-martial free from substantial doubt as to legality, fairness, and impartiality," pursuant to RCM 912(f)(1)(N), Manual for Courts-Martial, United States, 1984, the test for member disqualification is "whether the member's personal bias is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Reynolds*, 23 MJ 292, 294 (CMA 1987). The burden of maintaining the challenge belongs to the challenging party. RCM 912(f)(3). Based in part on considerations of the convening authority's power to select members and each party's having only a single peremptory challenge, this Court has consistently applied the rule that challenges for cause should be granted liberally. *United States v. Glenn*, 25 MJ 278, 279 (CMA 1987). This Court has repeatedly stated a *clear-abuse-of-discretion-standard* when reviewing a military judge's denial of a challenge for cause. *E.g., United States v. White*, 36 MJ 284, 287 (CMA 1993); *United States v. Reynolds, supra*. This position is consistent with the

federal practice. S. Childress and M. Davis, *Federal Standards of Review* § 4.09 at 4–63 (1992). The Supreme Court has stated:

> The findings of the trial court upon that issue [challenges to jury] ought not to be set aside by a reviewing court, unless the error is apparent.... It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the "conscience or discretion" of the court.

*Reynolds v. United States*, 98 U.S. 145, 156, 25 L.Ed. 244 (1879). Therefore, the military judge has broad discretion in this matter, and this Court "will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." 36 MJ at 287.

■ Applying this standard here, the military judge's ruling denying the challenges for cause was not a clear abuse of discretion. The three members disclosed that they knew the assistant trial counsel because he had provided legal assistance to them. This professional relationship does not constitute a *per se* ground for challenge. *See United States v. Lake*, 36 MJ 317 (CMA 1993); *United States v. Porter*, 17 MJ 377 (CMA 1984). Moreover, each member's association was further attenuated because the member did not have a personal relationship with assistant trial counsel. All members presented positive assurances that their contact did not cause them to look more favorably on the prosecution. While these claims of impartiality are not conclusive, they nonetheless can carry weight. *United States v. Nigro*, 28 MJ 415, 418 (CMA 1989); *United States v. Heriot*, 21 MJ 11 (CMA 1985). As appellant failed to carry his burden of maintaining the challenge for cause, the military judge could properly deny them. *See States v. Jobson*, 31 MJ 117 (CMA 1990).

1. With Lieutenant Colonel Modica excused, Lieutenant Colonel Smith, the spouse of the base commander, became the president of the court. As the base commander was not involved in appellant's chain of command or in any way with this court-martial, both counsel declined the opportunity to *voir dire* LtCol Smith, and there was no objection to her serving as president.

■ Similarly, the military judge did not abuse his discretion in denying the defense motion for a mistrial following assistant trial counsel's social conversation with the president of the court. As we have stated:

"Declaration of a mistrial is a drastic remedy, and such relief will be granted only to prevent a manifest injustice against the accused." *United States v. Rushatz,* 31 MJ 450, 456 (CMA 1990). It is appropriate only "whenever circumstances arise that cast substantial doubt upon the fairness or impartiality of the trial." *United States v. Waldron,* 15 USCMA 628, 631, 36 CMR 126, 129 (1966). The military judge's decision regarding motions for a mistrial will be measured for abuse of discretion.

*United States v. Dancy,* 38 MJ 1, 6 (CMA 1993). The Supreme Court has stated:

In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the courts and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer v. United States,* 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954). Our Court immediately and expressly applied this principle and stated, "The presumption must be rebutted by a 'clear and positive showing' that the improper communication from a

third person or witness did not and could not operate in any way to influence the decision." *United States v. Adamiak,* 4 USCMA 412, 418, 15 CMR 412, 418 (1954). More recently, this Court reaffirmed this standard. *United States v. Elmore,* 33 MJ 387, 393–94 (CMA 1991), *cert. denied,* 504 U.S. 909, 112 S.Ct. 1938, 118 L.Ed.2d 544 (1992). Ultimately, the judge determines whether the Government has rebutted the presumption of prejudice. *United States v. Adamiak, supra.*

Of course, prohibiting private communication or contact with a member applies to legal counsel. Ethical standards state that it is unprofessional conduct for a counsel to communicate privately with a member concerning a case prior to or during trial except as permitted by law. *See, e.g.,* Rule 3.5(b), ABA Model Rules of Professional Conduct (1989);[2] Standard 3–5.4(a), ABA Standards for Criminal Justice: The Prosecution Function at 3–78 (1986); Standard 4–7.3(a), ABA Standards for Criminal Justice: The Defense Function at 4–83 (1986).[3] A variety of courts have condemned improper communication by a counsel with a juror. *See e.g., United States v. Jean,* 25 F.3d 588 (7th Cir.1994); *Garden Grove School District of Orange County v. Hendler,* 63 Cal.2d 141, 45 Cal. Rptr. 313, 313, 403 P.2d 721, 723–24 (1965); *Hutchins v. State,* 140 Ind. 78, 39 NE 243 (1894).

■ Recognizing that assistant trial counsel's conversation with the senior member was not "about the matter pending before the" court and, therefore, did not violate the letter of law, it was contrary to the spirit of both legal and ethical prohibitions against improper contact with a member.[4] This

---

2. This Court has adopted the Model Rules for its bar. Rule 15(a), Rules of Practice and Procedure, United States Court of Military Appeals, 38 MJ LXXXII.

3. At the time of appellant's trial, Air Force regulations adopted the ABA Standards for Criminal Justice and the 1969 ABA Code (as revised) of Professional Responsibility, including the disciplinary rules, subject to consistency with the Uniform Code of Military Justice and the Manual for Courts–Martial, United States, 1984 and appliable directives. Paras. 1–6 and 8–8, Air Force Regulation (AFR) 111–1, Military Justice Guide

(Change 2, 12 July 1989). Air Force TJAG Policy Letter 26 of October 22, 1992, contains the current Rules of Professional Responsibility and USAF Standards for the Administration of Criminal Justice. Rule 3.5 of these Air Force Rules, with terminology modified to be consistent with Air Force practice, is the same as Rule 3.5 of the ABA Model Rules of Professional Conduct (1989).

4. The operative disciplinary rule, DR 7–108(B), of the ABA Code of Professional Responsibility, states in part:

During the trial of a case:

Court has repeatedly recognized the unavoidability of inadvertent contact with members in the normal course of military life. *See, e.g., United States v. Adamiak* and *United States v. Elmore,* both *supra* at 26. Here, however, it was not the fact of the contact but its duration for over 1 hour and content that included general legal and military justice matters that plainly make this conversation improper.

■ We must therefore look to the record to determine if the Government carried its burden to make "a 'clear and positive showing' that the improper communication from a third person or witness did not and could not operate in any way to influence the decision." *United States v. Adamiak* and *United States v. Elmore,* both *supra.* We evaluate this issue in light of the entire record to determine whether the error deprived the defendant of a fair trial. *See Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *United States v. Jean, supra.* In looking to the entire record, we consider the nature and seriousness of the prosecutorial misconduct, any curative actions taken by the court, and the weight of the evidence against the accused. *See United States v. Simmons,* 38 MJ 376 (CMA 1993), and *United States v. Jean, supra.*

Even though improper, the contact was neither intentional nor egregious. Moreover, the prompt and responsible action by trial counsel and the military judge insured a complete record of this matter. *Cf. United States v. Martinez,* 40 MJ 82, 83 (CMA 1994) (reversible error for military judge's failure to make a record of the improper *ex parte* communication with a third-person).

Following assistant trial counsel's reporting the improper contact and communication to trial counsel who promptly presented this matter to the military judge, the military judge permitted a full inquiry into the matter. Importantly, this inquiry established that assistant trial counsel's improper but inadvertent contact did not prejudice appel-

lant or taint the proceedings. No information regarding appellant's case was discussed. We do not view identification of the duty station of the counsel in the case as a significant matter. Also, the military judge took remedial action to remove even an appearance of impropriety when the judge granted the defense challenge for cause and excused LtCol Modica. Viewing the record of the communication and the remedial action taken by the military judge, we are confident that the presumption of prejudice is overcome by "a 'clear and positive showing' that the improper communication" did not in any way influence or affect the fairness of the trial. The military judge did not abuse his discretion in denying appellant's motion for a mistrial.

■ We must briefly address the judge's decision not to disqualify assistant trial defense counsel. RCM 901(d)(3) vests the military judge with authority to decide whether a counsel may be disqualified. According to the Discussion to that Rule: "Counsel may be disqualified because of lack of necessary qualifications, or because of duties or actions which are inconsistent with the role of counsel. If it appears that any counsel may be disqualified, the military judge should conduct an inquiry or hearing." This provision is a continuance of the longstanding rule that misconduct is a basis for disqualification. *See* para. 44b, Manual for Courts–Martial, United States, 1951. In strict compliance with RCM 901(d)(3), the military judge created a record of this matter. For reasons previously cited, most significantly the inadvertent nature of this social contact and the absence of discussion regarding appellant's case, we conclude the judge did not abuse his discretion in denying the defense motion to disqualify assistant trial counsel.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and GIERKE concur.

---

(1) A lawyer connected therewith shall not communicate with or cause another to communicate with any member of the jury.

This rule was made applicable to Air Force lawyers pursuant to paragraph 8–8, AFR 111–1, Military Justice Guide (Change 2, 12 July 1989).