UNITED STATES, Appellee,

v.

Specialist Carl D. KNIGHT, 386–68–2796,
United States Army, Appellant.

ARMY 9302252.

U.S. Army Court of Criminal Appeals.

28 Feb. 1995.

For Appellant: Captain Blair M. Jacobs, JAGC (argued); Major Robin L. Hall, JAGC, Captain Martin L. Sims, JAGC (on brief); Major Roy H. Hewitt, JAGC.

For Appellee: Major Lyle D. Jentzer, JAGC (argued); Colonel John M. Smith, JAGC, Lieutenant Colonel James L. Pohl, JAGC (on brief).

Before GRAVELLE, JOHNSTON, and MOGRIDGE, Appellate Military Judges.

## OPINION OF THE COURT

MOGRIDGE, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted members of rape in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for seven years, forfeiture of $500.00 pay per month for twenty-four months and reduction to Private E1.

Although the appellant asserts several issues, the controlling issue on appeal is whether the numerous and intentional communications during the trial between members of the court-martial panel and a third party concerning the key issues of the trial invalidate the verdict. We have determined that the court-martial process was so tainted by the conduct of the members as to require reversal.

### I. Facts

The appellant met Ms. T, a twenty-three-year-old German female, at the Noncommissioned Officers' Club, Giessen, Germany, shortly before midnight on 29 May 1994. After the club closed, about 0400 hours, she followed him in her car to his apartment. Ms. T testified that at the apartment, she refused his advances and was pushed, causing her to fall on the bed. She further testified that the prolonged encounter between the two included the appellant tying her to the bed, unwelcomed cunnilingus, anal sodomy, vaginal intercourse, and attempted forced fellatio.

Five days later she went to the police and was sent to a doctor for a rape protocol examination. She said she had no injuries and the examination revealed none. She also refused to allow the doctor to examine her anus. The following day, she went to her private doctor who found a few small old bruises, but no other injuries. A friend would later testify he saw no injuries to Ms. T's wrist, neck, or otherwise the day following the incident. Ms. T admitted that she was told by her best friend that her mother had received a monetary settlement some years before after the mother reported she had been raped by an American soldier. Ms. T was advised by her friends to report this incident and Ms. T was expecting a settlement of approximately 12,000 deutsche marks. These injuries, or the lack thereof, and Ms. T's credibility were the focus of the litigation at trial.

Following the presentation of evidence on the merits, argument of counsel and instructions by the military judge, the court closed to deliberate on findings. While the court members were deliberating on findings, the defense moved for a mistrial based in part upon members of the court discussing issues of the case among themselves and with others prior to deliberations. Specialist (SPC) R testified, on the motion, that he drove three court members, Command Sergeant Major (CSM) Ortiz, Master Sergeant (MSG) Johnson and MSG Allen, daily between their offices in Hanau and the courtroom in Giessen. The three court members repeatedly asked SPC R his opinion about the victim's testimony and about other facts which corroborated or contradicted her testimony. In addition, he was asked what transpired during the Article 39(a), UCMJ, sessions when the court members were excluded from the courtroom.

Specialist R gave his opinion concerning Ms. T's testimony, the conflicting doctors' testimony (using his specialized knowledge as an Emergency Medical Treatment (EMT) trained soldier), and described the "official business" that occurred during the Article 39(a), UCMJ, sessions. Specialist R testified he was unable to remember all that was said or by whom.

The military judge then asked each member a few limited questions to ascertain if that member received any extraneous information that impacted upon the deliberations.[1] No mention was made of SPC R or his testimony. In addition, the military judge asked whether there were full and free discussions during the deliberations and whether the members voted their conscience. All members gave answers indicating nothing occurred to compromise the proceedings. Based on the members' answers, the military judge permitted the trial to proceed to completion.

After the trial, the convening authority ordered a post-trial Article 39(a), UCMJ, session to inquire further concerning the communications and discussions between CSM Ortiz, MSG Johnson, MSG Allen and CSM Ortiz' driver, SPC R. The convening authority granted the three court members immunity and ordered their testimony.

After hearing testimony, the military judge found, as fact, that during the first day of trial, numerous conversations took place between the three court members concerning Ms. T's testimony and credibility, and, on the way back to Hanau, SPC R was included in this discussion. The military judge was unable to make specific findings as to exactly what was said, or by whom.

The military judge also found that during the return trip to the courtroom in Giessen, the court members and SPC R discussed in greater detail the complainant's testimony. A portion of the conversation also concerned what had transpired while SPC R was not in the courtroom. He was asked his opinion about a "medical observation" regarding bruising. According to SPC R "the only opinion offered was knowledge that I have from medical experience that I received in the past." Using his EMT training, he gave freely of his opinion, some of which appears to be beneficial to the appellant. Specialist R opined:

I felt the victim was assaulted; and yes, I felt something did take place from what I heard and observed. But I also told them that I was not completely assured that it was the accused person that had transacted everything.

These discussions continued during the lunch break and also included discussions about the two doctors called by the prosecution, who contradicted each other. The military judge was unable to make specific findings as to who asked which questions. Additional discussions between the court members and SPC R took place to include inquiries about what transpired during Article 39(a), UCMJ, sessions when the court members were excluded and about the spectators betting on how long the court would deliberate. The military judge stated his inability to make more specific findings was due to the court members' professed lack of memory.

The military judge found the court members did not follow the court's instruction not to discuss the case among themselves or with others. However, he concluded these conversations did not generate information prejudicial to the accused. He further concluded that "SPC R neither indicated he felt the accused was guilty nor did he make any comment about the evidence which a reasonable listener could construe to the prejudice of the accused." The military judge continued, "[E]ven if one were to conclude that SPC R's assertions could possibly have been prejudicial, I'm satisfied any such prejudice was harmless beyond a reasonable doubt. Consequently, I conclude there's no basis for a mistrial nor need for any further action."

## II. Law

The appellant contends that the communications among the members and with SPC R deprived him of fair and impartial fact finders. *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907); *United States v. Resko,* 3 F.3d 684, 688 (3d Cir.1993). The government concedes these communications took place, but argues the

---

1. At the outset we note that a military judge's authority to question court members concerning their deliberations is limited in scope. *See generally United States v. Brooks,* 41 M.J. 792 (Army Ct.Crim.Ap.1995). A military judge may question the court members when there is a colorable allegation that extraneous prejudicial information has been improperly brought to the attention of the members. Rule for Courts–Martial 922(e); Military Rule of Evidence 606(b). The military judge's inquiry was proper in this case.

communications were favorable to the accused and, therefore, could not have been prejudicial.

In *United States v. Elmore*, 33 M.J. 387 (C.M.A.1991), the Court of Appeals for the Armed Forces [hereinafter Court of Appeals] addressed an inadvertent contact between the members and a forensic serologist who was later called to testify for the government. They were billeted in the same hotel, ate dinner together the night before trial, and ate breakfast together the following morning. The military judge allowed extensive voir dire and, in denying the defense challenge of the court members for cause found, "I am satisfied beyond any doubt that there has been no discussion of any issues relevant to this case. The one hour casual dinner conversation, in my judgment, just does not suffice to establish some kind of prejudice." *Id.* at 393.

 The standard applied in *Elmore* was adopted from the Supreme Court case of *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), and cited by the Court of Appeals in *United States v. Adamiak*, 4 U.S.C.M.A. 412, 15 C.M.R. 412, 1954 WL 2310 (1954) and *United States v. Hamilton*, 41 M.J. 22 (C.M.A.1994). The court in *Elmore* stated:

> The Supreme Court long ago proclaimed that private communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge are absolutely forbidden, and invalidate the verdict, at least until their harmlessness is made to appear.

*Elmore*, 33 M.J. at 393–94. The standards that we must use in deciding this case have been established by the Court of Appeals in *Adamiak, Elmore,* and *Hamilton.* A rebuttable presumption of prejudice arises from the communications between jurors and a witness or other third party and the burden rests heavily upon the government to establish that such contact with the juror was harmless. *Hamilton*, 41 M.J. at 26; *Elmore*, 33 M.J. at 394; *Adamiak*, 15 C.M.R. at 417–18. The government must rebut the presumption by a clear and positive showing that the improper communication from a

third person or witness did not and could not operate in any way to influence the decision. *Id.* Our standard in reviewing the military judge's ruling is abuse of discretion. *United States v. Rosser*, 6 M.J. 267 (C.M.A.1979).

*United States v. Gaston*, 45 C.M.R. 837, 1972 WL 14310 (A.C.M.R.1972), a case factually similar to the one at bar, also provides useful guidance to us in deciding this case. Prior to deliberations, two members of the court talked with an individual who gave them information regarding the accused. In finding the military judge erred by denying a mistrial based upon his inability to find prejudice, we said, "[T]he Government is required to make a clear and positive showing that the improper communication from a third person or witness *did not* and *could not* operate in any way to influence the court's decision." *Id.* at 838. (emphasis in original). We further found, "From our examination of the record, the contents of the communication could have had an influence or bearing upon the members' opinion of the accused's credibility. Further, in our opinion, the Government did not adequately meet its burden to rebut the presumption of prejudice." *Id.* We set aside the findings of guilty in *Gaston.*

 From the precedents cited above, it is clear that once it has been determined that the communications have been made, prejudice is presumed. The government has a heavy burden to rebut the presumption of prejudice by a clear and positive showing that the improper communication did not or could not operate to influence the decision. The more extensive and flagrant the violative contact, whether in length, frequency, content, or the nature of the communications themselves, the heavier the burden.

 In the instant case, the discussions were extensive, frequent, intentional, and concerned most of the key relevant issues litigated at trial. There is no question that such communications could have operated to influence the court members' decision. The case at bar is more egregious than *Gaston* because the communications were more ex-

tensive and flagrant and therefore, requires the same remedy.[2]

The Court of Appeals, in finding a military judge abused his discretion by denying a defense motion for mistrial based in part on a court member's discussions with a witness, has said, "[W]e find the military judge was remiss in his affirmative responsibilities to avoid the appearance of evil in his courtroom and to foster public confidence in court-martial proceedings." *United States v. Rosser*, 6 M.J. 267, 273 (C.M.A.1979). In *Rosser*, the court member, a sergeant major, was approached by the accused's company commander, who advised the court member "that things would be better off if he could get three particular individuals properly taken care of." As in the instant case, the military judge in *Rosser* found that, although the statement was made, the court member was not influenced by the statement, and denied the defense motion for a mistrial. The military judge's finding of no prejudice was based in part upon the court members' inability to recall the comment.

In the case at bar, the court members, even though immunized, professed limited or no memory of the numerous conversations with SPC R and assured the military judge, that if there were conversations, they were not influenced. In *Adamiak*, the Court of Appeals said:

[W]e deem it appropriate that an especially high standard of caution be adhered to by the court-martial in rulings on challenges affecting the competency of a court member who has conversed with a witness. As suggested earlier, in this delicate sphere "appearances" are important. Moreover, the question is not concluded by the statement of a court member that he was not influenced by the conversational contact. *Adamiak*, 15 C.M.R. at 419.

■ Justice demands the court members be impartial. "Impartiality is not a technical concept, it is a state of mind." *United States v. Wood*, 299 U.S. 123, 145, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936). As emphasized in *Baker*

*v. Hudspeth*, 129 F.2d 779, 782 (10th Cir. 1942):

[D]eeply embedded in the right to a fair and impartial trial is the requirement that the jury of twelve men, chosen to sit in judgement, shall have no fixed opinion concerning the guilt or innocence of the one on trial, and that their ultimate verdict shall be based upon the facts as they are submitted to them by the court, under its instructions and superintendence. Anything less is a farce and a travesty upon justice.

## III. Decision

■ Although we agree with the military judge's findings of fact, and we adopt them, the conclusions based upon those findings are not supported by the record, and therefore are erroneous. We find the communications between the members and their driver to be extensive, frequent, and initiated by the members to obtain improper and extrajudicial information relevant to the key issues in the trial. We further find that because of the crucial nature of the information sought, the manner in which it was sought, and by whom, such communications are presumed prejudicial and to have influenced the court members' decision. Nothing presented, to include the immunized testimony of the court members themselves, is sufficient to overcome that presumption of prejudice in this case. That immunization of the court members was required to resolve this matter should have sounded a resounding alarm to all. The court members' actions tainted this court-martial. The military judge, the staff judge advocate, and the convening authority, in failing to take immediate and appropriate corrective action, were remiss in their affirmative responsibility to avoid the appearance of evil in the courtroom and to foster public confidence in court-martial proceedings.

---

2. Although we agree with the appellant that he was prejudiced by the court members' actions, we believe the issue is broader in scope than advocated. The military justice system is entitled to fact finders who take their oath and resulting responsibilities seriously and do not seek out extrajudicial and clearly improper information. The actions of the members deprived not only the appellant, but the entire military justice system, of its day in court.

We find that the military judge abused his discretion in denying the defense motion for a mistrial.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge GRAVELLE and Judge JOHNSTON concur.