UNITED STATES, Appellee,

v.

Marcus T. GOLSTON, Specialist,
U.S. Army, Appellant.

No. 99–0286.
Crim.App. No. 9600326.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 10, 1999.

Decided May 25, 2000.

SULLIVAN, J., delivered the opinion of the Court, in which CRAWFORD, C.J., GIERKE and EFFRON, JJ., and COX, S.J., joined. GIERKE, J., filed a concurring opinion, in which COX, S.J., joined.

For Appellant: *Captain Blair T. O'Connor* (argued); *Colonel Adele H. Odegard, Major Scott R. Morris,* and *Captain Kirsten Campbell–Brunson* (on brief); *Colonel John T. Phelps II.*

For Appellee: *Captain Katherine M. Kane* (argued); *Colonel Russell S. Estey* and *Captain Mary E. Braisted* (on brief).

Judge SULLIVAN delivered the opinion of the Court.

During the early part of 1996, appellant was tried by a general court-martial composed of officer and enlisted members at Darmstadt and Kaiserslautern, Germany. Contrary to his pleas, he was found guilty of two specifications of indecent acts, each with a different child, and one specification of indecent liberties with two other female children, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The members sentenced appellant to a dishonorable discharge, 7 years' confinement, forfeiture of $874 pay per month for 84 months, and reduction to E–1. The convening authority approved the sentence as adjudged on September 30, 1996. The Court of Criminal Appeals affirmed the findings and sentence in a per curiam opinion on August 11, 1998.

On June 17, 1999, this Court granted review on the following issue assigned by appellant:

WHETHER THE PROSECUTOR VIOLATED THE LEGAL NORMS AND STANDARDS OF ARMY REGULATION 27–26 AND PROFESSIONAL ETHICS BY BREACHING MATERIAL ASPECTS OF HIS ATTORNEY–CLIENT PRIVILEGE WITH MRS. GOLSTON, HIS FORMER LEGAL ASSISTANCE CLIENT, WHEN HE LATER REPRESENTED THE GOVERNMENT AGAINST SPC GOLSTON AND USED MATERIALLY ADVERSE INFORMATION OBTAINED FROM HIS PRIOR REPRESENTATION OF MRS. GOLSTON TO SPC GOLSTON'S PREJUDICE.

We hold that trial counsel's failure to promptly disclose his prior attorney-client relationship with appellant's wife, a defense witness in this case, did not substantially prejudice appellant's right to a fair trial. *See United States v. Meek*, 44 MJ 1 (1996); *see* *generally United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

Evidence was admitted at appellant's court-martial that in July, 1994, he exposed himself, while standing on his balcony, to two young girls whom he knew were watching him from a neighboring bathroom (S.H. age 11; S.S. age 8). Evidence was also admitted showing another incident involving two different girls (I.R. age 6; M.M. age 7). It showed that appellant was playing with his toddler son in a playground in his housing area, and the two girls were in the same area. Appellant reached under the dress of one of the girls and touched her vaginal area two times. With the other girl, appellant played "hide the ball" by slipping a tennis ball into her pants and having her "worm" around until it came out. That evening, the two girls told their parents what had happened in the playground.

At appellant's general court-martial, Mrs. Claudia Golston, appellant's wife, was called as a defense witness on the merits to testify that one of the girls (S.H.) involved in the indecent liberties specification had a crush on appellant. The following exchange then occurred between assistant trial counsel and Mrs. Golston:

ATC: Have you lied in the past to protect your husband and your family?

WIT: Yes.

ATC: Isn't it true that you were accused of stealing food and movies from the shoppette that you were working at?

WIT: Yes.

ATC: And that initially you admitted to stealing that food and actually signed a promissory note agreeing to pay back the money?

WIT: Yes.

ATC: But when confronted by MPI and questioned about that and told that it could be very serious, that you may have to be sent home, you lied and said, "No, I didn't steal that food. I was put under pressure. Therefore, I told them I stole it"?

WIT: Yes; however—may I elaborate?

ATC: No.

That evening, after court was recessed, defense counsel met with appellant and Mrs.

Golston. She informed defense counsel that trial counsel had been her legal services attorney with regard to the events about which assistant trial counsel cross-examined her. The next morning, defense counsel informed the military judge of the situation and made a motion for mistrial or in the alternative, a motion to strike Mrs. Golston's cross-examination testimony and to instruct the members to disregard it. (R. at 349)

The military judge questioned appellant's standing to raise a violation of his wife's right to confidentiality with her counsel. Trial counsel then made the following statement for the record:

TC: Yes, sir. I feel like I just need to state a few things for the record, if I may.

Your Honor, it is true that, in February of 1994, I represented Mrs. Golston in a legal assistance capacity. And, quite frankly, over the last two years I had completely forgotten it. I have represented hundreds of legal assistance clients in the year that I was a legal assistance attorney in this very busy community.

We attempted to interview Mrs. Golston several times. One time right after a 39(a) session; and we called a couple of times. It was only about two weeks ago, when I requested the smif file from the—from the unit in preparation for sentencing, that I was going through the file and I found the two reports that were—that pertained to Mrs. Golston, and I found them very interesting. I started reading through it and said, "Boy! This sounds familiar." So, I went back through my notes and I found that, yes, indeed, I had represented her. I turned over all the documents to Captain Willson. I told Captain Willson that I had represented her in a legal assistance capacity; did not go into any of the details of my representation of her; however, the smif file did disclose that the BSB Commander did want to institute or had instituted civilian misconduct against Mrs. Golston and was going to early-return her from Germany back to America. And, there were several documents in there pertaining to this early-return. So, there was not only an issue where MPI had a report of it, AAFES had a report of it, the BSB had a report of it, and the command also had a report of it. It was all—it was all—all of this documentation was found in those various records. When we realized that there could have been even the appearance of impropriety, I stopped working on anything that dealt with Claudia Golston. And, for what it's worth, I did not divulge any [of] my conversations with Captain Willson or anyone else in this office about what I represented Claudia Golston on or the conversations that we had.

I just thought it was important for me to make that clear.

The military judge then questioned assistant trial counsel concerning his cross-examination of Mrs. Golston, particularly where he got the information upon which he based that cross-examination. He responded, "Sir, I have the Military Police Report that includes two statements by Mrs. Golston, and that was provided to me by Captain Hellmich; and I based my cross-examination on those two statements as well as the case file for the case that we're not hearing." The military judge then denied the defense's motion and alternative motion.

———  —  ———

We initially note that a trial counsel at a court-martial is the representative of the United States Government, and he or she must act accordingly. The Supreme Court in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), clearly delineated the responsibilities of this governmental position:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with

earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. *It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.*

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, *improper* suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

(Emphasis added.)

▆▆▆▆ In addition, the Supreme Court has indicated a criminal defendant may challenge prosecutorial methods as a "due process violation" [1] and secure relief if they are "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987); *United States v. Hasting,* 461 U.S. 499, 506, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). Recently, in *United States v. Meek,* 44 MJ at 5, we stated a similar view on this matter:

Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.,* a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon. *See Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (duty of a prosecutor "to refrain from improper methods calculated to produce a wrongful conviction"); *see generally* S. Childress and M. Davis, 2 *Federal Standards of Review* § 12.01 (2d ed.1992). The characterization of certain action as "prosecutorial

misconduct," however does not in itself mandate dismissal of charges against an accused or ordering a rehearing in every case where it has occurred. *See Greer v. Miller,* 483 U.S. 756, 765, 107 S.Ct. 3102, 3108–09, 97 L.Ed.2d 618 (1987); *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). *Instead, an appellate court usually considers the legal norm violated by the prosecutor and determines if its violation actually impacted on a substantial right of an accused (i.e., resulted in prejudice).* See generally *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981); *United States v. Rushatz,* [31 MJ 450, 457–58 (CMA 1990)]. *If it did, then the reviewing court still considers the trial record as a whole to determine whether such a right's violation was harmless under all the facts of a particular case.* See generally *United States v. Morrison,* 449 U.S. at 365, 101 S.Ct. at 668; *see also Davis v. Zant,* 36 F.3d 1538, 1546 (11th Cir.1994).

(Emphasis added) (footnote omitted).

Appellant has lodged a three-prong attack on the conduct of trial counsel in his case and asserts that he was substantially prejudiced by trial counsel's prosecutorial misconduct. First, he argues that trial counsel was disqualified from prosecuting him because this prosecution "placed him [trial counsel] in a position where he could have used information acquired through his former representation of Mrs. Golston to her disadvantage ...." Final Brief at 12. Second, he asserts that trial counsel unethically used prior confidential disclosures by Mrs. Golston, made to him in a legal assistance matter, to impeach her as a witness at appellant's court-martial. Finally, he asserts that trial counsel failed to disclose *sua sponte* his prior attorney-client

---

1. Appellant's ability to pursue a prosecutorial misconduct motion under *Greer v. Miller,* 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), and *United States v. Meek,* 44 MJ 1 (1996), is not impeded by his lack of standing to directly assert a violation of Mrs.

Golston's attorney-client privilege with trial counsel. *See also United States v. Johnston,* 146 F.3d 785, 794 (10th Cir.1998) ("The defendant's ability to pursue a motion to suppress under section 2518 is not impeded by his lack of standing to directly assert the attorney-client privilege.").

relationship with Mrs. Golston prior to her cross-examination on matters included in this relationship and, thus, created an impermissible "appearance of impropriety" concerning his court-martial. *Id.* at 12, 15–17.

Appellant's first argument for prosecutorial misconduct is based on this Court's decision in *United States v. McCluskey*, 6 USCMA 545, 20 CMR 261, 1955 WL 3563 (1955). He cites that case for the proposition that "[a] legal assistance attorney who acquires adverse information against an accused from a confidential attorney-client relationship is thereby precluded from serving as a prosecutor in a subsequent court-martial against the accused." Final Brief 10. He then asserts that the same rule of law should apply where the prior attorney-client relationship is with an accused's wife and she is expected to be called or is called as a defense witness at the subsequent court-martial of her husband. We disagree.

The decisions of this Court in *McCluskey* and *United States v. Green*, 5 USCMA 610, 18 CMR 234, 1955 WL 3315 (1955), deal with direct violations of a military accused's prior attorney-client privilege. In both cases, an attorney-client relationship was formed with a military accused and later breached by his lawyer with respect to the very matter for which the accused was court-martialed. Article 27(a)(2), UCMJ, 10 USC § 827(a)(2), was the legal basis for our decision in these cases, and at the time, it stated: "... nor shall any person who has acted for the defense act subsequently in the same case for the prosecution." Clearly, Article 27(a) was not violated in appellant's case.[2] Moreover, we can find no codal article, Manual provision, or service regulation that disqualifies a military attorney from prosecuting a military accused at court-martial simply because this attorney previously represented the accused's wife in an unrelated matter and she was expected to be called as a defense witness at his court-martial. *Cf.* Rule 1.9(a), Army Regulation (AR) 27–26 (1 May 1992) ("A lawyer who has formerly represented a client in a matter shall not thereafter (1) represent another person *in the same or a substantially related matter* in which the person's interests are materially adverse to the interests of the client....") (emphasis added).

Appellant's next argument is that trial counsel actually "breached" his attorney-client relationship with appellant's wife and improperly used her confidences to impeach her as a witness at appellant's court-martial. Clearly, such conduct, if it occurred as a matter of fact, would be unprofessional misconduct by trial counsel. *See McCluskey, supra* at 550, 20 CMR at 266; Rule 1.9(a), *supra* ("A lawyer who has formerly represented a client in a matter shall not thereafter ... (2) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."). Paragraph 4–8(a), AR 27–3 (21 Feb. 1996), also states:

4–8. Attorney–client privilege

a. Communications between attorney and client are privileged. *See* AR 27–26. Those providing legal assistance will carefully guard the attorney-client relationship and protect the confidentiality of all privileged communications with their clients, as well as the confidentiality of other privileged information or documents that may be acquired. Privileged communications will be disclosed only in accordance with applicable law. If a client authorizes the disclosure of privileged matters, such authorization should be obtained in writing, and the attorney should keep a copy of the authorization.

Nevertheless, the record before us overwhelmingly established that trial counsel, as a matter of fact, did not divulge attorney-client confidences to assistant trial counsel for purposes of cross-examining appellant's wife. First, trial counsel on the record stated, *inter alia*, "And, for what it's worth, I did not divulge any [of] my conversations with

---

**2.** The current version of Article 27(a)(2) is substantively the same as the version in effect when *McCluskey* and *Green* were decided.

Captain Willson or anyone else in this office about what I represented Claudia Golston on or the conversations we had." Moreover, assistant trial counsel on direct examination by the military judge responded clearly on this precise question:

MJ: Well, Captain Willson, where did you get the information upon which you cross-examined Mrs. Golston?

ATC: Sir, I have the Military Police Report that includes two statements by Mrs. Golston, and that was provided to me by Captain Hellmich; and I based my cross-examination on those two statements as well as the case file for the case that we're not hearing.

Finally, appellant has not offered any direct evidence contradicting trial counsel and assistant trial counsel's representations in this matter.[3] Accordingly, we find his argument to be without merit.

■ Appellant's final argument is that trial counsel engaged in prosecutorial misconduct when he failed to *sua sponte* inform the military judge of a possible conflict of interest in this case. In particular, he notes that trial counsel did not advise the judge of his predicament prior to the Government's cross-examination of appellant's wife on her prior arrest for shoplifting, and instead remained silent until the defense brought this matter to the attention of the military judge. Appellant broadly asserts that such prosecutorial inaction caused his case to "reek with the appearance of impropriety." Final Brief at 12.

RCM 901(d), Manual for Courts–Martial, United States (1995 ed.),[4] provides that "[t]he trial counsel shall announce the legal qualifi-

cations and status as to oaths of the members of the prosecution and *whether any member of the prosecution has acted in any manner which might tend to disqualify that counsel.*" (Emphasis added.) Here, trial counsel stated for the record at the beginning of appellant's court-martial that "[n]o member of the prosecution has acted *in any manner which might tend to disqualify us in this court-martial.*" (Emphasis added.) However, prior to trial, he recognized that the appearance of Mrs. Golston as a witness in this case might raise an *"appearance of impropriety,"* at least on his part. *But see also United States v. Boone,* 42 MJ 308, 313 (1995) (team approach to ineffective assistance of counsel issue). While trial counsel was technically correct that no disqualifying conflict of interest existed at the outset of this trial, the actual calling of Mrs. Golston as a defense witness cast doubt on his earlier responses. In our view, he had a continuing duty to apprise the trial judge of any change in circumstances concerning his earlier assertion concerning matters "which might tend to disqualify" him. Moreover, our case law has repeatedly held that notice to the trial judge is the appropriate prosecutorial response in these circumstances. *See United States v. Breese,* 11 MJ 17, 23 (CMA 1981); *United States v. Lucas,* 25 MJ 9, 11 (CMA 1987); *see also United States v. Hamilton,* 41 MJ 22, 27 (CMA 1994).[5] We conclude that trial counsel failed in this duty to avoid even the appearance of wrongdoing in the area of attorney-client relationships. *See McCluskey,* 6 USCMA at 550, 20 CMR at 266.

■ Nevertheless, we conclude that appellant was not prejudiced by trial counsel's

---

3. Appellant failed to pursue a discovery violation motion at trial, which he now contends might have produced some proof contradicting trial counsel and assistant trial counsel's versions of the facts surrounding this matter. We consider such an argument unsupported on the record. If the prosecution team had acquired discoverable information as a result of trial counsel's representation of Mrs. Golston, which it did not make available to the defense, there would have been clear prejudice to appellant from the ethical violation. The military judge provided the defense with ample opportunity to crystalize the discovery issue, but the defense did not make a focused

discovery request. Appellant cannot now speculate about what the prosecution may have acquired when he did not take advantage of the discovery opportunity available at trial.

4. The 1998 Manual version of this rule is identical to the one in effect at the time of appellant's trial.

5. *See generally* Canon 9, ABA Model Code of Professional Responsibility (1980) (A Lawyer Should Avoid Even the Appearance of Professional Impropriety); *see also* Ethical Considerations 9–2, 9–6, 4–2, 1–1, and 1–4.

failure to inform the military judge and the defense about this possible conflict of interest. Art. 59(a), UCMJ, 10 USC § 859(a); *United States v. Meek, supra.* Appellant's wife promptly notified defense counsel, after her cross-examination by assistant trial counsel, that she had been represented by trial counsel "regarding some of the issues which Captain Willson questioned her on yesterday." Moreover, defense counsel was able to make timely motions for mistrial or to disregard appellant's wife's cross-examination testimony. Finally, trial counsel and assistant trial counsel eventually disclosed on the record the circumstances surrounding the potential conflict interest, their efforts to avoid it, and their word that no violation of the attorney-client privilege of Claudia Golston had occurred. *Cf. United States v. Davis,* 3 MJ 430, 433–34 (CMA 1977) (perfunctory inquiry into conflict of interests or divisions of loyalty not satisfactory). In circumstances such as these, where the potential appearance of impropriety or unfairness has been dispelled, we find no prejudice has inured to appellant and to the system of military justice. *See United States v. Smith,* 26 MJ 152, 154 (CMA 1988); *see also United States v. Rushatz,* 31 MJ at 455.

The decision of the United States Army Court of Criminal Appeals is affirmed.

GIERKE, Judge (concurring):

I agree with the decision and rationale in this opinion. I agree that there was no breach of the attorney-client privilege between trial counsel and Mrs. Golston. I agree that appellant was not prejudiced. I write separately to express my own views about the conduct of the prosecution team in this case.

In *United States v. Boone,* 42 MJ 308, 313 (1995), we measured the performance of defense counsel by evaluating "the combined efforts of the defense team as a whole." In my view, this team approach is equally applicable to the prosecution. In this case, the prosecution team labored under a conflict of interest. Its interests were adverse to Mrs. Golston's. It wanted to send Specialist Golston to jail; Mrs. Golston wanted to keep him out of jail. The prosecution team was determined to attack Mrs. Golston's reputation; she had an interest in protecting it. Under the team approach adopted by this Court in *Boone,* trial counsel's conflict of interest was imputed to the entire prosecution team. The conflict of interest could be resolved only by relieving trial counsel from further participation in the case.

When trial counsel discovered that he had previously represented Mrs. Golston and disclosed that fact to assistant trial counsel, both officers had an ethical duty to disclose the conflict of interest to the military judge immediately, and not wait for two more weeks until Mrs. Golston raised the issue in the middle of this trial. *See United States v. Murphy,* 50 MJ 4, 10 (1998) (appellant entitled to have military judge settle conflict-of-interest issues on the record); *United States v. Breese,* 11 MJ 17, 23 (CMA 1981) (conflict of interest presumed where military judge has not conducted suitable inquiry). Both officers had a duty to "avoid the very *appearance* of that wrongdoing which, in obedience to the important policy dictating [the attorney-client] relationship, the courts are impelled to deplore...." *United States v. McCluskey,* 6 USCMA 545, 550, 20 CMR 261, 266, 1955 WL 3563 (1955). In my view, they failed in that duty.

To Mrs. Golston and any observer who knew that trial counsel had represented her, the situation looked like a conflict of interest. To Mrs. Golston and any observer who knew that trial counsel had represented her, it appeared that trial counsel had breached the attorney-client privilege when assistant trial counsel cross-examined her about the same matter that she and trial counsel had exchanged confidential communications. The prosecution team violated the precept announced in *McCluskey* and codified in the ABA Code of Professional Responsibility.

I agree with the majority's ultimate conclusion that appellant was not prejudiced under the specific facts of this case. I sincerely hope that this case will cause prosecutors to be more sensitive to the potential for conflicts of interest arising from multiple military duties.