Darl "Hunk" HAVENS,
Petitioner-Appellant,

v.

STATE OF INDIANA, Jack R. Duckworth, Warden, and Indiana Attorney General, Respondents-Appellees.

No. 85–2277.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1986.

Decided June 10, 1986.

Lawrence Durance (Law Student), Notre Dame, Ind., for petitioner-appellant.

Sabra A. Weliever, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before CUMMINGS, Chief Judge, and BAUER and FLÁUM, Circuit Judges.

BAUER, Circuit Judge.

Defendant Darl "Hunk" Havens appeals from the denial by the district court of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Havens was convicted of attempted burglary and was found to be a habitual offender. The district court denied Havens's petition for habeas corpus relief on the grounds that Havens was not denied due process either by the trial court's failure to disqualify the prosecutor who had represented him on unrelated charges four and five years earlier, or by allowing that same prosecutor to file a habitual offender charge. We affirm.

I.

On August 5, 1979, Havens and Fred Sexton, his co-defendant, were charged with attempted burglary. Fred Sexton plead guilty to a lesser included offense. John Milford, Havens's former counsel, was assigned to prosecute the case. Milford represented Havens on two prior unrelated criminal convictions in 1974 and 1975 for possession of burglary tools.

On May 13, 1980, Milford filed a habitual offender charge against Havens based on the two prior convictions in which he had represented Havens. Havens filed a motion to disqualify Milford on the grounds that as his defense counsel on prior occasions, Milford was in the position to use privileged information against him that Milford obtained during the attorney-client relationship. The court denied the motion as to the underlying burglary charge but withheld ruling as to the habitual offender charge. Prior to trial, the court recused Milford from prosecuting the habitual offender count.

The jury found Havens guilty on both counts. He was sentenced to two years on the attempted burglary charge, and to thirty years on the habitual offender charge. The Indiana Supreme Court affirmed the defendant's conviction and sentence. The district court denied habeas corpus relief and this appeal followed.

II.

On appeal Havens argues that allowing John Milford to prosecute him denied him a fair trial in violation of the due process clause of the fourteenth amendment because Milford used privileged information obtained during the attorney-client relationship to prosecute him on the attempted burglary charge. Although we are sensitive to the ethical concerns involved, we do not agree that Havens was denied a fair trial based on our analysis under the "substantial relationship" test. *Cannon v. U.S. Acoustics Corp.*, 398 F.Supp. 209, 223 (1975); *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d

221 (1978); *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir.1976); *Westinghouse Electric Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir.1978). First, Havens's earlier convictions were based on charges unrelated to the attempted burglary charge. Second, the information elicited during Milford's cross-examination was not confidential information because it was a matter of public record. Third, Havens failed to prove that by reason of the former confidential relationship between him and Milford, Milford acquired special knowledge of the facts that were used against Havens at trial. Finally, Havens fails to prove that Milford's cross-examination so prejudiced his right to a fair trial that he was denied due process.

The sole basis for Havens' claim is the following exchange which occurred during Milford's cross-examination of him:

Milford: Were you and Jim Thurman in a motorcyle club together at one time?

Havens: Well, we have been friend [sic] for a long time.

Milford: Were you in the Outlaw Motorcycle Club with him at one time?

Havens: Well—yeah. I guess so.

(R. 318).

Havens argues that his membership in a motorcycle gang is confidential information revealed to Milford during their prior attorney-client relationship. Havens own testimony does not support this claim. He testified that the prosecution introduced evidence during his earlier trials that he was a member of a motorcycle gang. When counsel asked Havens on redirect how Milford knew he had been a member of a motorcycle gang, he answered, "He tried me on several occasions, he defended me on several occasions when I had trials, and they [the prosecution] brought all of this motorcycle stuff up in it." (R. 338). This testimony shows that Milford knew of Havens's membership in a motorcycle gang not because he had revealed this information to Milford in confidence, but because the prosecution had brought it up in earlier trials. Regardless of who had prosecuted Havens, that person would have had access to information about his background. Indeed, we agree with the Indiana Supreme Court that the testimony concerning Havens's membership in a motorcycle gang is a matter of public record and therefore is not protected by the attorney-client privilege.

Although no constitutional violation exists, ethical concerns dictate that it may have been the better course of action for Milford to recuse himself from the entire case. The basic policies underlying potential conflict of interest problems can be found in Canons 4 and 9 of the American Bar Association Code of Professional Responsibility. Canon 4 provides that "a Lawyer Should Preserve the Confidences and Secrets of a Client." Canon 9 provides that "a Lawyer Should Avoid Even the Appearance of Professional Impropriety." After careful scrutiny of the evidence and with these principles in mind, we find that Milford did not disclose information obtained in confidence, nor in any way use information obtained in the attorney-client relationship in his prosecution against Havens. The stringent requirement that a lawyer should avoid even the appearance of impropriety, however, leads us to believe that it would have been better from the public's point of view if Milford had not participated in this case. Moreover, the ABA Model Rules of Professional Conduct, Rule 1.9 expressly prohibits against representation of interests adverse to former clients.

Rule 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Rule 1.9 is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide in attorneys. It is also important for the maintenance of

public confidence in the integrity of the bar.

If Milford had not participated in this case, this issue could have been prudently avoided on appeal.

### III.

 Havens argues that it was error to allow Milford to file the information charging him with being a habitual offender because he had represented Havens on the convictions alleged in the information. The mere filing of the habitual offender charge by the deputy prosecutor did not deny defendant due process. Havens's prior convictions are a matter of public record. If Milford had not filed the information, another deputy prosecutor could have. In any event, if the deputy prosecutor who actually prosecuted the habitual offender charge had felt the charge was unfairly brought, he could have dismissed that count on the basis of his prosecutorial discretion.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.