608

UNITED STATES

v.

Glenn A. HUSTWIT, 043 68 2715, Private (E–1), U.S. Marine Corps.

NMCM 89 4346.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 12 July 1989.

Decided 28 June 1991.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

Lt Col John A. Janega, USMCR, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before ALBERTSON, LANDEN and STRICKLAND, JJ.

ALBERTSON, Senior Judge:

Appellant was tried by a special court-martial composed of military judge alone for three specifications of unauthorized absence and four specifications of wrongful appropriation in violation of Articles 86 and

121, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 921, respectively. He was sentenced to 100 days confinement, forfeiture of $300.00 pay per month for 4 months and a bad conduct discharge. The convening authority approved the sentence adjudged and, except for the bad conduct discharge, ordered it executed.

Appellant assigns as error:

THE GOVERNMENT PROSECUTED APPELLANT IN VIOLATION OF THE ATTORNEY–CLIENT PRIVILEGE AND ARTICLE 27(a)(2), UNIFORM CODE OF MILITARY JUSTICE, 10 U.S.C. § 827(a)(2), BY EMPLOYING AS TRIAL COUNSEL A JUDGE ADVOCATE FROM WHOM APPELLANT HAD SOUGHT ADVICE ON THE SAME OFFENSES FOR WHICH HE WAS TRIED.

In support of the assigned issue, appellant submitted the following affidavit he made 2 years after his trial.

Decliration [sic] of Pvt Glenn A. Hustwit

1. On or about 29 April 1988, I went to speak with a military lawyer, Capt. Foreman for pre NJP or summery [sic] court-martial counseling.

2. I advised Capt. Foreman that I had charges against me for UA, missing remedial PT, on 27 Apr 1988.

3. I also advised him that NIS was looking for me in connection with a cash machine card theft.

4. Capt. Foreman asked if I had said anything to NIS. I told him no.

5. Captain Foreman told me not to tell NIS anything. If I got charged with anything, we would talk about it later.

6. Next time I saw Capt. Foreman, he was the prosecutor at my special court-martial.

7. I told Capt. Harris, who had become my defense counsel, all the above on the day of trial. Capt. Harris told me not to worry about it.

I declare under penalty of perjury that the foregoing is true and correct. Signed on 22 June 1990.

/S/ Glenn A. Hustwit
Glenn A. Hustwit
Witness by /S/ (Indecipherable)
SSgt USMC

The Government then submitted an affidavit in rebuttal to appellant's affidavit. In pertinent part it states:

AFFIDAVIT OF CAPTAIN VINCENT K. FOREMAN, U.S. MARINE CORPS

I, Vincent K. Foreman, after first being duly sworn, state that the following is true to the best of my knowledge and belief:

. . . .

I have reviewed my defense counsel log book to determine if I ever provided NJP or other types of counseling to a Private Glen Hustwit, U.S. Marine Corps. A review of the log, a certified true copy of which is attached, shows that I did provide NJP counseling to him on 29 April 1988 and that the NJP offense was an Article 86, UCMJ violation.

I have no independent recollection of any conversations which took place during the counseling. However, based on my normal NJP counseling practices, the log entry, and the fact that I prosecuted Private Hustwit at his later court-martial, I am certain that I neither formed an attorney-client relationship with him nor discussed with him any matters which formed the basis of that later court-martial. If I had obtained any facts from the Marine pertaining to the NJP offense or had discussed with him an NIS investigation and had later seen those offenses at the court-martial, I would have turned the case over to Captain Bob Breckenridge, U.S. Marine Corps, who was the Assistant OIC of the Legal Service Support Section in Iwakuni.

As part of my NJP counseling process I initially advise the service member that I have not been appointed to represent them and that I am simply going to explain their rights at NJP, what could happen if they refuse, and possible defenses. In order to advise a

Marine as to his rights and how he might exercise those rights, I required the units to send the full NJP package for my review. That package would generally include a copy of the SRB, the UPB and any witness statements (which often included statements of the Marine). After providing the basic rights at NJP and courts-martial I would explain the offense to the Marine and point out possible defenses to the charge—i.e., permission to be somewhere else, conflicting orders from superiors, etc. Also I would explain E & M to the Marine and how he could present such evidence either at NJP or a court-martial. The explanation of defenses would cover general defenses and, if the package contained any statements of the Marine, defenses which might be available if the statement is taken as "true". I would tell the Marine that I do not know if the defense is available since I did not and will not investigate either the witnesses' statements or the Marine's statement. After explaining the rights and going over the offense(s) I would ask if there were any questions with a caution that I we would not discuss the Marine's "side of the story". If questions were asked they were generally directed toward what kind of information would have to be presented to mitigate the offense or show one of the defenses either at NJP or at a court-martial.

Evidently Private Hustwit informed me that he was going to refuse NJP and demand a summary court-martial, a demand that I would have told him may not be "honored" since the servicemember cannot demand the type of court-martial. It was not unusual for servicemembers to tell me whether they were going to accept or refuse NJP. My log entry would have been made because I expected to see the Marine again to advise him of his summary court-martial rights, if the command did not refer the charges to a special court-martial.

Again, in my normal NJP counseling I would not discuss extraneous matters with the Marine. The counseling would be limited to rights advisement and how to present information to the commanding officer. If Private Hustwit had mentioned an NIS investigation, I would have noted that, and I would not have prosecuted him.

/S/ Vincent K. Foreman
Vincent K. Foreman

SWORN TO AND SUBSCRIBED BEFORE ME THIS 23RD DAY OF JULY 1990

/S/ Joan–Marie A. Johnson
Joan–Marie A. Johnson
Notary Public
My commission expires
26 Oct 1990

The copy of the page from his log book that Captain Foreman attached to his affidavit has an entry that reads: "880429 Hustwit, Glenn Pvt [HMS–15] NJP [arrow indicating to] SCM 86."

We find, as facts, from the affidavits and the record of trial: (1) the offenses, on their face, demonstrate that (a) the same unauthorized absence offense for which Captain Foreman advised appellant pursuant to *United States v. Booker*, 5 M.J. 238 (C.M.A.1977), *reconsidered in part*, 5 M.J. 246 (C.M.A.1978), was the same offense as that alleged in Specification 1 of Charge I; (b) the limited discussion appellant had with Captain Foreman concerning a possible NIS investigation into his having stolen an ATM card was a matter related to the ATM larceny offenses charged in Charge IV and its 5 specifications; (2) the appellant believed a confidence existed between Captain Foreman and himself concerning information disclosed during that *Booker* counselling session; (3) Captain Foreman was the trial counsel in the special court-martial that tried the appellant for the unauthorized absence and larceny offenses; (4) the matters discussed, even if only tangentially, during the *Booker* counselling session were either the same or related matters for which appellant was tried by the special court-martial two and one-half months later; (6) at the time of trial appellant perceived Captain Foreman's position as trial

counsel in his special court-martial as inconsistent with his previous counselling position as his *Booker* advisor; (7) appellant advised his trial defense counsel about his concern that the trial counsel had been his *Booker* advisor; and (8) trial defense counsel told appellant not to worry about it and the matter was not raised again by appellant until his submission of pleading for our review of his case under Article 66(c), UCMJ, 10 U.S.C. § 866(c).

▇ The Government asserts, and we agree, that whether a former counsel is disqualified in a subsequent case depends on whether the appellant can meet the three-pronged test of establishing a former representation, a substantial relationship between the subject matter of the former representation and the issues in the subsequent case, and later adverse employment. Once the appellant meets that three-pronged test, the Government must affirmatively demonstrate that no communication whatsoever has occurred between that counsel and the prosecution staff regarding any aspect of appellant's case. *United States v. Rushatz*, 31 M.J. 450 (C.M.A.1990); *United States v. Stubbs*, 23 M.J. 188 (C.M.A.1987).

▇ A former representation, albeit limited in scope and purpose, existed between appellant and Captain Foreman. We arrive at that conclusion based on our application of the facts, as we have found them, to the decisions of the Court of Military Appeals in *Rushatz, Stubbs, United States v. Turley*, 8 U.S.C.M.A. 262, 24 C.M.R. 72 (1957), *United States v. McCluskey*, 6 U.S.C.M.A. 545, 20 C.M.R. 261 (1955), and this Court in *United States v. Taylor*, 3 M.J. 947 (N.C.M.R.1977), *pet. denied*, 4 M.J. 194 (C.M.A.1977). In *Taylor*, we said:

> [W]here legal *advice* of *any kind* is sought from a professional legal advisor in his capacity as such, the attorney-client privilege arises for the purpose of

protecting confidential communications from disclosure by the attorney in the absence of waiver, and, as a basis for requiring that an attorney avoid the appearance of conflict of interest by refraining from assisting in the prosecution of one from whom he has received related confidences.

3 M.J. at 950 (emphasis added) (citations omitted). *United States v. Landof*, 591 F.2d 36 (9th Cir.1978), *reh'g and reh'g en banc denied* (1979). Little doubt should exist that a judge advocate who provides advice in accordance with *Booker* is a professional legal advisor. *See Taylor*; Manual of the Judge Advocate General (JAG-MAN), JAGINST. 5800.7B § 0104; Naval Legal Services Command Instruction 5800.1B § 0614; *Off the Record*, Department of the Navy, Office of the Judge Advocate General, No. 116, 23 August 1990, at 34.

▇ The cited judicial precedent suggests that an attorney-client relationship is formed when a service member obtains legal advice of any kind from an individual representing himself as a legal advisor. The existence of that attorney-client relationship creates a confidential relationship that provides an evidentiary and ethical protection surrounding any confidences or secrets disclosed during that relationship. J. Wigmore, *Evidence*, § 2292 (1961); C. Wolfram, *Modern Legal Ethics*, 147 (1987). The fact that the attorney may have instructions from superiors as to the scope of his representation during that relationship does not remove the fact of the confidential relationship nor does it in any way prevent the establishment of the relationship if the advisee has a reasonable belief that what he says to the legal advisor is disclosed in confidence. *McCluskey*, 6 U.S.C.M.A. at 551 n. 1, 20 C.M.R. at 267 n. 1; *see United States v. Costanzo*, 625 F.2d 465 (3d Cir. 1980) *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985).[1] That an at-

---

1. The existence of an attorney-client relationship is a question of fact that depends on the facts and circumstances of each case. *United States v. Gandy*, 9 U.S.C.M.A. 355, 26 C.M.R. 135 (1958); *United States v. Richards*, 17 M.J. 1016 (N.M.C.M.R.1984), *pet. denied*, 19 M.J. 27

(C.M.A.1984). Whether "attorney-client relationship" is a term of art having legal implications other than as a term describing a condition of employment and whether that term encompasses the consultation situation before us, we do not decide because it is immaterial to the

torney violates his instructions to limit the scope of his representation and may be disciplined for such violation does not affect the validity of the attorney-client relationship and the confidential nature of any disclosures arising therefrom.

The *Rushatz–Stubbs–Turley– Taylor* line of cases dealt with the issue of whether the matters for which the accused was being tried were sufficiently related to matters the accused had had previous representation by his previous defense counsel such that an attorney-client relationship continued to exist for the purpose of the accused having a right to have that former counsel represent him as individual military counsel at the subsequent proceedings. The dicta in *Taylor* as supported by *McCluskey*, however, dealt with the protection of the evidentiary privilege and the ethical obligation of confidence where a potential conflict arose between the attorney/legal advisor and the accused who had received legal advice from the attorney/legal advisor who subsequently participated in a prosecution of the accused. Thus, the legal issues addressed by these two line of cases are separate and distinct. The legal issue at the crux of appellant's case is the confidentiality of communications between him and Captain Foreman as addressed by the *Taylor–McCluskey* precedent. Under the factual circumstances of appellant's case, as revealed by the affidavits submitted by appellant and Captain Foreman, an attorney-client representation existed between the two, although the scope of representation was limited. That attorney-client representation had subsumed within it a confidential relationship that protected appellant's communications to Captain Foreman from disclosure.

■ Once a confidential relationship exists, the attorney ordinarily cannot act in a manner inconsistent to the client's interest in the same or any other matter related to the subject of the confidence. This is so even if the relationship then existing at the time of disclosure was subsequently terminated. *United States v. Green,* 5 U.S.C.M.A. 610, 18 C.M.R. 234 (1955). In *Green, McCluskey, Turley,* and *Taylor,* confidential information was acquired and disclosed by the attorney contrary to the interests of his former client. In *Taylor* the principle forecasted by the dicta appears even broader in scope: "An attorney, who on a previous occasion has represented or *advised* an accused person must avoid the slightest suspicion, the very appearance, of assisting—little or much, directly or indirectly, consciously or unconsciously—in the prosecution of his erstwhile client from whom he *may have* acquired private information." 3 M.J. at 950 (emphasis added).

The affidavits submitted by the parties do not, however, reveal a substantial relationship between the *Booker* advice and the issues presented in the subsequent court-martial of appellant. Appellant does not state that he disclosed any confidence to Captain Foreman during his *Booker* counselling. In fact, appellant acknowledges that he only told Captain Foreman that NIS was investigating him for a cash machine card theft and Captain Foreman's response to him was to advise him to say nothing and to return to him for advice if he were ever charged with anything. Captain Foreman's affidavit confirms appellant's statements because he states that his regular *Booker* counselling never included matters unrelated to his normal NJP counselling which never included hearing his advisee's "side of the story." Captain Foreman, therefore, did not acquire any confidential information. Thus, we find from the two

resolution of the issue in this case. We will use the term, however, for the purposes of our discussion solely for want of a better term. We will also presume that our use of that term under the circumstances of this case has no consequences beyond the factual situation presented by this case. Likewise, we do not decide whether the term "attorney-client relationship" is a different concept from "confidential relationship" or whether they are interchangeable terms. For our purposes, we will treat them as separate terms with distinct legal implications, *i.e.,* the former is an employment relationship to include the scope of the employment; the latter is an evidentiary privilege and ethical obligation protecting disclosure of communications between lawyer and client. The former includes the latter, but the latter does not necessarily include the former.

affidavits that nothing of a confidential nature, including appellant's "side of the story," was discussed between appellant and Captain Foreman during the *Booker* counselling that related to the substance of the offenses for which Captain Foreman subsequently prosecuted appellant. The only information revealed in the affidavits that Captain Foreman may have acquired from appellant was that a NIS investigation was pending on appellant that had nothing to do with the subject of the *Booker* counselling. Such information was not sufficient to constitute a substantial relationship between the subject-matter of the former representation and the issues in the subsequent case; it was not antagonistic to the appellant's best interests; it was at most neutral and certainly was in no way incriminating.

At this point, then, appellant has borne his burden of establishing the first prong of the test, but has failed on the second. We believe he also fails as to the third prong. On its face, Captain Foreman's position as trial counsel appears inconsistent with his previous role as appellant's legal advisor. To determine whether Captain Foreman's apparently inconsistent position was adverse employment, we look at his conduct as a *Booker* legal advisor in the light most favorable to appellant using the standard for resolving doubts concerning equivocal or apparently inconsistent conduct by the attorney. That standard provides that because an attorney is

> bound to avoid divulging a client's confidences to the latter's disadvantage, doubts concerning equivocal or apparently inconsistent conduct on the part of the attorney must be resolved against him— that is, it must have been regarded as having been antagonistic to the best interests of his client. *United States v. Turley, supra.* The integrity of the legal profession and our system of justice demand no less.

*McCluskey,* 6 U.S.C.M.A. at 550, 20 C.M.R. at 266 (1955).

In his affidavit Captain Foreman describes his normal routine for handling his *Booker* counselling duties. He forthright-

ly admits he has no independent recollection of any conversation that took place during the counselling session he had with appellant. This is certainly understandable: his log indicates, just by the one page submitted to the Court with his affidavit, an extensive list of individuals he counselled over a 2-month period involving a wide variety of offenses; and over two years had elapsed from the time he had the counselling session with appellant and the time he provided his affidavit. This lengthy time lapse as well as the fact that Captain Foreman's standard *"Booker* advice" went well beyond the guidelines established by section 0104a(3), JAGMAN, does nothing to negate doubts that might arise concerning possible equivocal or inconsistent conduct on the part of Captain Foreman

 Where an attorney subsequently takes a position adverse to an individual's interest for whom a previous confidential relationship existed, it is immaterial that the attorney may not divulge confidential communications from the individual with whom he has the confidence. *United States v. McKee,* 2 M.J. 981, 983 (A.C.M.R. 1976). That no conscious disloyalty might have occurred in Captain Foreman's prosecution of appellant and that no express showing has been made that he in fact disclosed any confidential communication made to him by appellant is also immaterial, because if such information was disclosed, under *Taylor,* Captain Foreman's position as trial counsel was antagonistic to the best interests of appellant. *Taylor; McKee.* The following denotes the seriousness with which this Court has said it would treat the issue: "This rule is so strictly enforced that an attorney is disqualified from prosecuting his former client in the same general matter even though while representing the client he acquired no information which could adversely affect him in the subsequent adverse action." (citations omitted). *United States v. Diaz,* 9 M.J. 691, 693 (N.C.M.R. 1980). Unlike the Court in *Diaz* and *Green* we need not conjecture about whether Captain Foreman divulged any confidential information revealed to him by appellant be-

cause we have concluded that the facts show that the confidential relationship involved the disclosure of no confidential information by appellant to Captain Foreman. Additionally, the application of this three-pronged legal test requires consideration of practicabilities we subsequently recognized in *United States v. Hannon,* 19 M.J. 726 (N.M.C.M.R.1984):

> In the military situation, it is not uncommon for a former defense counsel to see a previous client once again roaming the halls of military justice. It is that counsel's responsibility to avoid any participation in the current prosecution if the matter in the previous case and the current case appear to be related in some manner. It is also that counsel's responsibility to refrain from *divulging or utilizing any confidential information* in the current prosecution. Such participation would definitely jeopardize the fairness of the trial and call into question the ethics of that counsel's conduct. In the delicately balanced system of military justice, where potential for such situations is always present due to regular office assignment rotation, counsel sensitivity to this issue is particularly important. It is not enough, however, for the military lawyer to avoid any actual conflicts of interest, but also to avoid even the slightest appearance of impropriety.

19 M.J. at 728.

■ In this light, we must now determine whether Captain Foreman's position as trial counsel in appellant's special court-martial, a position on its face inconsistent with his prior position as appellant's legal advisor with a confidential relationship, was adverse employment when the facts reveal no confidential information passed between the two during his counselling the appellant, and thus no information was acquired and none could ever be disclosed. Does such adverse employment fall within the prohibition of Article 27(a), UCMJ, which states in pertinent part: "No person who has acted for the prosecution may act later in the same case for the defense, *nor may any person who has acted for the defense act later in the case for the prose-*

*cution.*" (Emphasis added.) We find it does not.

The test we used to answer that question was established by the Court of Military Appeals in *United States v. Stringer,* 4 U.S.C.M.A. 494, 16 C.M.R. 68, (1954):

> The critical inquiry ... centers normally ... on the possibility that the accused may be prejudiced by the presence of a personal interest in the outcome of the case on the part of the prosecutor, or the latter's possession of privileged information or an intimate knowledge of the facts by reason of a professional relationship with the accused. If—after a consideration of all the circumstances—possibility of prejudice may be said to exist, the prosecutor must be disqualified.

5 U.S.C.M.A. at 502, 16 C.M.R. at 76.

■ Under the circumstances of this case, we find none of these inhibitors and thus no possibility of prejudice to the appellant exists. As we have previously indicated, the record is void of any evidence from which we can find that appellant's conversation with Captain Foreman adversely affected his interests, either by damaging his interests or providing an advantage to the Government at his court-martial. *Rushatz.* The record does not reveal that appellant was intimidated into his pleas or into not giving sworn testimony during the sentencing portion of his court-martial because the trial counsel had previously had a confidential relationship with appellant. *Stringer; Diaz.* Accordingly, Captain Foreman was not disqualified under Article 27(a), UCMJ, from prosecuting appellant. The attorney-client representation was limited in purpose and scope, one that provided standard procedural advice and advice as to consequences of any choice made by appellant. No confidence was acquired and none was disclosed, and the practicalities inherent in normal military lawyer assignment rotation without a showing of specific prejudice (particularly when the appearance of conflict is recognized and then waived), militate against a *per se* rule of disqualification when it is not required in the interests of military justice. Case by case analysis sat-

isfies the best interests of the military justice system because it balances an individual's right to preserve confidences and the government's interest in having the freedom of assigning lawyers in accordance with the needs of the command.

 Assuming arguendo, however, that a strict liability application of the disqualification rule is required, then the question arises as to the proper remedy for Captain Foreman's disqualification. The remedy depends on whether a valid waiver to the disqualification exists. *See Turley; McKee; Reaves v. State of Florida*, 16 Fla.L.Weekly 587, 588, 48 Crim.L.Rep 1395 (Fla.1991). If the disqualification was not waived, then the doctrine of general prejudice applies, *United States v. Green*, 5 U.S.C.M.A. 610, 18 C.M.R. 234 (1955), and reversal is required. With regard to waiver, however, we, like the Air Force Court of Military Review, "are loathe to invoke the doctrine of waiver as to a claimed error which could result in a manifest miscarriage of justice or otherwise seriously affect the fairness or integrity of courts-martial." *United States v. Fowler*, 6 M.J. 501, 503 (A.F.C.M.R.1978) (citations omitted).

The waiver issue is not open and shut. Appellant states in his affidavit that on the day of trial he told his defense counsel that he had spoken to Captain Foreman about the UA offense and the NIS investigation and that Captain Foreman told him not to talk to NIS and if he was charged with anything they would talk later. Appellant states that his defense counsel told him "not to worry about it." Assuming that what appellant states is true, as we must since no rebuttal to that portion of appellant's affidavit is before the Court, we look to the record itself and find that appellant told the military judge that he had had sufficient time to discuss his case with his defense counsel, was satisfied with him and wanted to be represented by him. Were he concerned about Captain Foreman prosecuting him and with his defense counsel's response "not to worry about it," one presumes he would have expressed his dissatisfaction or concern to the military judge.

Accordingly, any disqualification of Captain Foreman as trial counsel because of any perceived violation of any confidential relationship was waived.

 We do note that trial counsel should be sensitive to his former roles and the appearances of inconsistent or adverse employment. If he finds recusal unnecessary, he might still consider acquainting the military judge with the particulars of his pretrial contact with the accused. The consequences of a valid disqualification can be drastic because despite the lack of objection by defense counsel, if prejudice is proven, an accused is entitled to a new trial with a wholly disinterested trial counsel. *Green; Diaz; Fowler; McKee.* Trial counsel should seek justice and the preservation of any convictions he obtains with as unchallengable a record as he can insure. Finally, we caution trial counsel that any prosecutor who is disqualified under this rule must properly be screened from other trial counsel. Failure to do so may require the court to disqualify all trial counsel within the trial section from prosecuting the case. *Reaves v. Florida;* ABA Comm. on Ethics and Professional Responsibility, Formal Opinion 342 (24 November 1975).

 We also caution defense counsel that he may risk his client's case if he fails to raise a proper motion to disqualify *before trial begins on the merits*. Failure to make the motion in a timely manner may be deemed an automatic waiver unless the defense can demonstrate that due diligence would not have disclosed the facts surrounding the prosecutor's prior involvement with the accused.

The findings and sentence approved on review below are affirmed.

Judge LANDEN and Judge STRICKLAND concur.