UNITED STATES, Appellee,

v.

Staff Sergeant Nathan H. WHEELER,
United States Army, Appellant.

ARMY 9801366.

U.S. Army Court of Criminal Appeals.

5 June 2002.

For Appellant: Colonel Adele H. Odegard, JA; Major Jonathan F. Potter, JA; Captain David S. Hurt, JA; Captain Steven P. Haight, JA (on brief).

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Edith M. Rob, JA; Major Daniel G. Brookhart, JA; Captain William J. Nelson, JA (on brief); Major Paul T. Cygnarowicz, JA.

Before CANNER, Senior Judge, CARTER, and HARVEY, Appellate Military Judges.

## OPINION OF THE COURT

HARVEY, Judge:

A general court-martial, composed of officer and enlisted members, convicted appellant, contrary to his pleas, of a violation of a lawful general regulation (two specifications) and adultery (two specifications), in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 [hereinafter UCMJ]. The convening authori-

ty approved the adjudged sentence to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to Private E1. As a matter of clemency, the convening authority suspended for two years execution of that part of the sentence extending to confinement in excess of four years. The convening authority waived automatic forfeitures for six months and directed payment of such monies to appellant's spouse pursuant to Article 58b(b), UCMJ, 10 U.S.C. § 858b(b).

In this Article 66, UCMJ, 10 U.S.C. § 866, appeal, appellate defense counsel assert eight assignments of error and appellant raises one issue for our consideration pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The first and eighth assignments of error merit discussion. In the first assignment of error, appellant makes three complaints regarding the participation of Captain (CPT) M as assistant trial counsel in his trial: (1) CPT M was disqualified from participation in appellant's prosecution because he is an accuser; (2) CPT M committed prosecutorial misconduct when he represented Mrs. Wheeler, appellant's wife, in a legal assistance capacity and then acted as assistant trial counsel; and (3) CPT M potentially used confidential attorney-client information from Mrs. Wheeler to her detriment. We agree with government appellate counsel that this assignment of error lacks merit.

Appellate defense counsel contend in the eighth assignment of error, and the government concedes, that there was no evidence that appellant digitally penetrated Private (PVT) M's vagina as alleged in Specification 2 of Charge I (violation of a lawful general regulation). We agree and will except the words, "and digitally penetrating her vagina," from Specification 2 of Charge I in our decretal paragraph.

### FACTS

In October 1996, military authorities at Fort Leonard Wood, Missouri began an investigation of cadre misconduct involving Initial Entry Training (IET) soldiers. In January 1997, the military police began an investigation of appellant, a drill sergeant, for indecent acts, adultery, and violation of a

lawful general regulation in relation to his conduct with Private First Class (PFC) A, a member of appellant's IET platoon. A parallel command investigation into PFC A's allegations was completed in June 1997 with a conclusion that her allegations were unfounded. There was widespread knowledge among unit cadre members of appellant's investigation because after PFC A's allegations surfaced, the command prohibited appellant's contact with IET soldiers, unless another cadre member was also present. On 23 September 1997, the military police investigation of PFC A's allegations was closed as unfounded. In September 1997, Mrs. Wheeler received legal assistance from CPT M, regarding the preparation of her separation agreement. New evidence surfaced in September 1997 indicating appellant was involved in a sexual relationship with PVT M, another member of his IET platoon who had completed IET about four months earlier.

Mrs. Wheeler and appellant provided post-trial affidavits alleging that CPT M's participation as assistant trial counsel at appellant's court-martial was improper. Mrs. Wheeler alleged that prior to appellant's trial, CPT M asked Mrs. Wheeler to consent to his assistance in the prosecution of her husband. Mrs. Wheeler objected because of the adverse financial and emotional impact that appellant's trial and sentence would have on her and her children. Mrs. Wheeler accused CPT M of violating her attorney-client privilege stating, "I have no doubt that things that I have told [CPT M] in confidence have aided in his investigation and prosecution of my husband." Mrs. Wheeler was not on the defense witness list and did not testify in her husband's court-martial.[1] Mrs. Wheeler's affidavit did not allege a specific violation of attorney-client confidentiality or explain how anything she told CPT M aided in the prosecution of her husband.[2]

Appellant's post-trial affidavit indicates that CPT M called him in September 1997 on behalf of Mrs. Wheeler and urged him to sign a separation agreement. Appellant objected to the separation agreement's proposal that he pay $1,300.00 per month in support. Appellant retained civilian counsel,[3] who negotiated an agreement with CPT M that included a payment of $800.00 per month in support. Captain M changed the separation agreement to conform to the reduced support requirement. According to appellant's affidavit, however, CPT M was "extremely upset" because he had to redo the separation agreement. Appellant indicated that during the negotiations on his separation agreement, "[CPT] M was well aware that I was under investigation for adultery." Appellant contends that CPT M's prosecution of him was "personal" and "a great conflict of interest." Appellant did not specifically allege that CPT M violated Mrs. Wheeler's right to attorney-client confidentiality.

After arraignment, at an Article 39(a), UCMJ, session, the trial counsel announced that CPT M was detailed to appellant's court-martial as assistant trial counsel by the Staff Judge Advocate, was qualified and certified under Articles 27(b) and 42(a), UCMJ, 10 U.S.C. §§ 827(b) and 842(a), and had "not acted in any manner which might tend to disqualify him from this court-martial."[4] Although appellant testified on the merits, CPT M did not cross-examine him. Captain M did not make closing arguments at the conclusion of the findings or sentencing phases of appellant's trial. Captain M's only participation during the sentencing phase of appellant's trial was to conduct a two-page direct examination of PVT M, one of the two IET soldiers who were involved in a sexual rela-

---

1. Prior to appellant's trial, Mrs. Wheeler moved from Missouri to Washington State.

2. We also requested that Mrs. Wheeler provide an additional affidavit detailing the specific information she told CPT M that was related to appellant's prosecution, including any details about how or what she knew about appellant's relationships with PFC A or PVT M. Mrs. Wheeler received the request for an affidavit and indicated no such affidavit would be forthcoming.

3. Appellant was not represented by civilian counsel at his court-martial.

4. Rule for Courts–Martial [hereinafter R.C.M.] 901(d)(1) states that "[t]he trial counsel shall announce the legal qualifications and status as to oaths of the members of the prosecution and whether any member of the prosecution has acted in any manner which might tend to disqualify that counsel."

tionship with appellant. The issue of CPT M's legal assistance to Mrs. Wheeler was never raised at appellant's trial.

We ordered affidavits from trial counsel and CPT M to address allegations made in Mrs. Wheeler's and appellant's affidavits. Captain M's post-trial affidavit states that his Deputy Staff Judge Advocate and a state bar ethics' representative advised him to tell Mrs. Wheeler that their attorney-client relationship was terminated about nine months earlier and that CPT M was legally authorized to and intended to assist in appellant's prosecution. Captain M never asked Mrs. Wheeler for permission to prosecute appellant. Captain M denied that he had any discussion with Mrs. Wheeler regarding "whether infidelity on the part of either partner was a source of marital discord" and he also denied that Mrs. Wheeler told him "anything related to the prosecution of [a]ppellant." Mrs. Wheeler did not indicate that "she believed [a]ppellant was involved in any unprofessional or sexual relationships with trainees" and she never told CPT M anything about PFC A or PVT M.

Captain M's affidavit indicates he did not believe that he ever talked to appellant about the Wheeler separation agreement because this was a function performed by other legal assistance office personnel. In any event, CPT M said that he was not responsible for re-typing separation agreements and would never get upset about changes to the contents of a separation agreement. Captain M also stated that he "was not aware that the [a]ppellant was under investigation for adultery during the time of [his] representation of Mrs. Wheeler." Captain M first became aware of appellant's investigation after he left his duties at the Tax Center, and became

a trial counsel in May 1998. Captain M told appellant's military defense counsel before appellant's trial began that he previously had an attorney-client relationship with Mrs. Wheeler.

## DISCUSSION

 Prosecutorial misconduct is generally defined as "action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (1996) (citing *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)) (other citation omitted). Allegations of prosecutorial misconduct are reviewed "on a case by case basis, assessing the nature of the conduct and the overall impact of the conduct on appellant's substantial rights." *United States v. Jenkins*, 50 M.J. 577, 580 n. 1 (N.M.Ct.Crim.App.1999) (citations omitted). Dismissal of the charges is not required if *"the trial record as a whole [establishes that the] right's violation was harmless under all the facts of a particular case."* *United States v. Golston*, 53 M.J. 61, 64 (2000) (alteration in original) (citing *Meek*, 44 M.J. at 5).[5] "The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense.'" *Meek*, 44 M.J. at 8 (quoting *United States v. Morrison*, 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). Despite appellant's lack of standing [6] and our concern that the issue of prosecutorial misconduct is mooted by Mrs. Wheeler's failure to testify,[7] we will address

**5.** The *Golston* decision was issued after appellant's case was tried.

**6.** Lack of standing is no bar to consideration of an allegation of prosecutorial misconduct. *Golston*, 53 M.J. at 64 n. 1 (citing *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir.1998)).

**7.** Generally, failure to present the contested evidence moots the contested issue. *See United States v. Dinges*, 55 M.J. 308, 311 (2001) (holding that the issue of a potentially mistaken grant of immunity is mooted by the failure to call the immunized witness (citations omitted)), *cert. de-*

*nied,* —— U.S. ——, 122 S.Ct. 1078, 151 L.Ed.2d 979 (2002); *United States v. Johnson*, 53 M.J. 459, 464 (2000) (Gierke, J., concurring in result) (holding that an issue of violation of the rights of appellant's spouse at his Article 32, UCMJ, hearing was mooted because her "testimony was never admitted as a prosecution exhibit" (citation omitted)); *United States v. Napoleon*, 46 M.J. 279, 281–82 (1997) (holding that an issue concerning the decision of the trial judge to admit appellant's statement was mooted by the prosecution's decision not to offer the statement into evidence); *United States v. Loving*, 41 M.J. 213, 258 (1994) (applying mootness to the question of

appellant's contention that CPT M was disqualified from acting as assistant trial counsel because of his representation of Mrs. Wheeler in a legal assistance matter.

### Disqualification Due to Being an Accuser

■ First, appellant asserts that CPT M is disqualified because he is an accuser, who ignored his ethical obligation to disqualify himself from acting as assistant trial counsel, and because CPT M was "still angry that the accused had refused to just sign the separation agreement, thereby creating additional work for [CPT M]." (Appellant's Brief at 7–8). "No person shall act as trial counsel or assistant trial counsel ... in any case in which that person is or has been: (A) The accuser ...." R.C.M. 502(d)(4).[8] An accuser is any person "who has an interest other than an official interest in the prosecution of the accused." UCMJ art. 1(9), 10 U.S.C. § 801(9). We apply the first *Ginn* principle to resolve this allegation without a post-trial hearing: "[I]f the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis." *United States v. Ginn*, 47 M.J. 236, 248 (1997). We assume without deciding that appellant's affidavit is accurate with respect to his conversation with CPT M. Nevertheless, we find that CPT M's interaction with appellant was not of sufficient emotional significance to cause him to become an accuser.

Captain M's contact with appellant and Mrs. Wheeler was official, as CPT M was performing legal assistance duties. Thereafter, CPT M and appellant's civilian counsel negotiated the terms of Mrs. Wheeler and appellant's separation agreement. Captain M was not appellant's victim, was not "blackmailed" by appellant, and had no other personal contacts with appellant that caused CPT M to "*initiate*[ ] a charge out of hostile *animus* toward[s] [appellant]." *Dinges*, 55 M.J. at 310 (discussing disqualification of convening authorities under a variety of scenarios). Appellant's refusal to sign the proposed separation agreement and the minor effort required to negotiate and revise the separation agreement do not transform CPT M into an accuser.[9]

### Disqualification Due to Former Representation

■ Second, appellant argues that CPT M is disqualified due to his former representation of Mrs. Wheeler. Captain M is disqualified from acting as assistant trial counsel if appellant establishes three elements: "a former representation, a substantial relationship between the subject matter of the former representation and the issues in the subsequent case, and later adverse employment." *United States v. Hustwit*, 33 M.J. 608, 612 (N.M.C.M.R.1991) (citing *United States v. Rushatz*, 31 M.J. 450 (C.M.A.1990); *United States v. Stubbs*, 23 M.J. 188 (C.M.A.1987)). Appellant meets the first and third prongs, but does not meet the second. Mrs. Wheeler and CPT M's affidavits agree that Mrs. Wheeler formed an attorney-client relationship with CPT M when she sought and he provided legal advice to her while he was performing legal assistance duties, which created " 'a confidential relationship that provides an evidentiary and ethical protection surrounding any confidences disclosed during that relationship.' " *United States v. Henry*, 50 M.J. 647, 650 (N.M.Ct.Crim.App.1999) (quoting *Hustwit*, 33 M.J. at 612) (other citations omitted). Captain M engaged in "later

---

misconduct by the trial judge), *aff'd on other grounds*, 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996).

8. "Accuser" was added to the list of disqualified persons based on the AMERICAN BAR ASSOCIATION STANDARDS, THE PROSECUTION FUNCTION, §§ 3–1(c); 3–3.9(c)(1979). *See Manual for Courts–Martial, United States*, (1998 ed.), app. 21, R.C.M. 502 analysis, at A21–27.

9. *See Wright v. United States*, 732 F.2d 1048, 1058 (2d Cir.1984) (holding that prosecutors were not disqualified because there was no uti-

lization of the criminal process to advance their own pecuniary interests); Annotation, *What Circumstances Justify Disqualification of Prosecutor in Federal Criminal Case*, 110 A.L.R. Fed. 523, § 7[a] (2002) (discussing the impact of actual or alleged personal interests upon the prosecutor's disqualification); *cf. United States v. Tittel*, 53 M.J. 313, 314–15 (2000) (Effron, J. and Sullivan, J., concurring in result) (holding that a convening authority is not an accuser for an accused who violates "a routine, administrative type of order" that he has issued).

adverse employment" when he acted as assistant trial counsel after previously representing Mrs. Wheeler. As Mrs. Wheeler states in her affidavit, "I was appalled and devastated. How could 'my own attorney work' against me and my children?"

■ We are not persuaded that an attorney should be forever barred from taking actions adverse to a former client's interests. Clearly, if a prosecutor may prosecute a former client,[10] we see no reason why a prosecutor may not prosecute the spouse of a former client so long as the prosecution at issue is not substantially related to the prior representation.[11] "[N]o codal article, Manual provision, or service regulation [specifically] disqualifies a military attorney from prosecuting a military accused at court-martial simply because this attorney previously represented

the accused's wife in an unrelated matter ...." *Golston*, 53 M.J. at 65.

Army Reg. 27–26, Legal Services: Rules of Professional Conduct for Lawyers, Rule [hereinafter Rule] 1.9(a) (1 May 1992), was designed to avoid conflicts of interest by Army attorneys relating to their former clients. Rule 1.9(a), which is taken verbatim from Model Rule 1.9(a),[12] states, "[a] lawyer who has formerly represented a client in a matter shall not thereafter: (1) represent another person in the same or a **substantially related** matter in which the person's interests are materially adverse to the interests of the client unless the former client consents after consultation." [13] (Emphasis added). Rule 1.9 was intended "to prevent even the potential that a former client's confidences and secrets may be used against him. With-

10. A prosecutor is not disqualified from prosecuting a former client if the criminal trials are not closely or substantially related. *See, e.g.,* *Havens v. Indiana,* 793 F.2d 143, 144–45 (7th Cir.1986); *United States v. Bolton,* 905 F.2d 319, 321–22 (10th Cir.1990); *DeShields v. Snyder,* 830 F.Supp. 816, 818 (D.Del.1993); *People v. Trail,* 197 Ill.App.3d 742, 144 Ill.Dec. 171, 555 N.E.2d 68, 74 (1990); *Corn v. State,* 659 N.E.2d 554, 556 (Ind.1995); *People v. Vanderpool,* 217 A.D.2d 716, 629 N.Y.S.2d 307, 309–10 (N.Y.App.Div. 1995); Allan L. Schwartz and Danny R. Veilleux, Annotation, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused,* 42 A.L.R.5th 581, §§ 3[b] and 4[b] (2001) [hereinafter Annotation, 42 A.L.R.5th 581]. A trial counsel who "previously represented other persons for offenses closely related to, but not the same as, those for which the accused stood trial ... is not disqualified on that showing alone." *United States v. Patrick,* 8 U.S.C.M.A. 212, 214, 24 C.M.R. 22, 24, 1957 WL 4691 (1957) (citation omitted); *see also United States v. Stringer,* 4 U.S.C.M.A. 494, 503–05, 16 C.M.R. 68, 77–79, 1954 WL 2430 (1954) (interpreting "in the same case" in Article 27(a)(2), UCMJ, to exclude uncharged co-accused).

11. A trial counsel is disqualified when the prior representation of the accused concerns "the very matter for which the accused was court-martialed." *Golston,* 53 M.J. at 65 (citing Article 27(a)(2), UCMJ, which has stated since 1950 that no person "who has acted for the defense [shall] act later in the same case for the prosecution"); *see also United States v. McCluskey,* 6 U.S.C.M.A. 545, 552, 20 C.M.R. 261, 268, 1955 WL 3563 (1955); *United States v. Green,* 5 U.S.C.M.A. 610, 618, 18 C.M.R. 234, 242, 1955 WL 3315 (1955); *United States v. Hightower,* 5 U.S.C.M.A. 385, 388, 18 C.M.R. 9, 12, 1955 WL 3276 (1955) (interpreting "in the same case" in Article

27(a)(2), UCMJ, to include co-accused who are tried separately); *United States v. Chierichetti,* 31 C.M.R. 524, 530, 1961 WL 4615 (A.F.B.R.1961) (holding that trial counsel "cannot thereafter act as counsel against his client in the [same] general matter"); *United States v. Brownell,* 17 C.M.R. 741, 742–43, 1954 WL 2699 (A.F.B.R.1954) (same); Annotation, 42 A.L.R.5th 581 at §§ 3[a] and 4[a].

12. The Comment to Model Rule 1.9 elaborates on the conflict of interest issue:

So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction.
... Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.
....
... Information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client.
Model Rules of Prof'l Conduct Rule 1.9 cmt. (2002).

13. *See Golston,* 53 M.J. at 65; *Havens,* 793 F.2d at 144–45; *United States v. Diaz,* 9 M.J. 691, 694 (N.C.M.R.1980); *United States v. Sulin,* 44 C.M.R. 624, 627, 1971 WL 12582 (A.F.C.M.R. 1971).

out such a rule, clients may be reluctant to confide in attorneys. It is also important for the maintenance of public confidence in the integrity of the bar." *Havens,* 793 F.2d at 145–46.

■ We compare the facts, circumstances, and legal issues of the past and present representations to determine whether they are related in some substantial way. If the prior representation is inextricably linked to the current case, including use of confidential information, then the trial counsel is disqualified.[14] If the previous representation is essentially separate from the court-martial, then the trial counsel is not disqualified.[15] We conclude that CPT M did not commit prosecutorial misconduct by acting as assistant trial counsel in appellant's case because his assistance to Mrs. Wheeler on her separation agreement was not "substantially related" to the prosecution of appellant's charges. *See Golston,* 53 M.J. at 65.

### Breach of Attorney–Client Confidentiality

■ Appellant's third argument is that CPT M potentially breached his attorney-client relationship with Mrs. Wheeler by improper use of attorney-client confidences in appellant's court-martial. Mrs. Wheeler's affidavit asserts, "I have no doubt that things I told [CPT M] in confidence have aided in the investigation and prosecution of my husband." Appellant argues, "it would be [ ] absurd to assume that CPT [M] in no way utilized information obtained within the umbrella of confidential client communications

to successfully prosecute the accused." (Appellant's Brief at 6).

"Once the attorney-client relationship has been shown to exist, no court—either Federal or state—has been more zealous in safeguarding and strengthening the privilege arising therefrom than has [the United States Court of Appeals of the Armed Forces]." *United States v. Turley,* 8 U.S.C.M.A. 262, 265, 24 C.M.R. 72, 75, 1957 WL 4705 (1957). The attorney-client privilege was " 'designed to encourage full and unrestrained communication between client and attorney.' " *Id.* (quoting *United States v. Fair,* 2 U.S.C.M.A. 521, 528, 10 C.M.R. 19, 26, 1953 WL 1767 (1953)). "This privilege—one of the oldest and soundest known to the common law—exists for the purpose of providing a client with assurances that he may disclose all relevant facts to his attorney safe from fear that his confidences will return to haunt him." *United States v. Marrelli,* 4 U.S.C.M.A. 276, 281, 15 C.M.R. 276, 281, 1954 WL 2288 (1954) (citing Wigmore, Evidence, 3d ed., § 2291). It is "[b]eyond dispute [that] the privilege attached to the confidential communications could only be waived by the former client." *United States v. Cote,* 11 M.J. 892, 894 (A.F.C.M.R.1981) (citation omitted); *see generally* Military Rule of Evidence [hereinafter Mil. R. Evid.] 502 (Lawyer-client privilege).

Clearly, use of confidential, non-public information gained from the attorney-client relationship to facilitate prosecution of a former client, if it occurred as a matter-of-fact,

---

14. *See Diaz,* 9 M.J. at 693–94 (holding that the trial counsel was disqualified because he assisted the defendant with a separation agreement, where the "marital turbulence [was] the sole stated motive for the misconduct charged at trial"); *State ex rel. McClanahan v. Hamilton,* 189 W.Va. 290, 430 S.E.2d 569, 575 (1993) (holding that the prosecutor was disqualified where the defendant was charged with malicious wounding of her husband and defended with self-defense and "battered wife syndrome" because the prosecutor represented the defendant in a divorce, which was based on cruel and inhumane treatment); *Lykins v. State,* 288 Md. 71, 415 A.2d 1113, 1121–22 (1980) (holding that the prosecutor was disqualified where the defendant was charged with assault with intent to murder because the prosecutor represented the defendant in a separation agreement, which included a

description of her personal and domestic history as well as her relationship with the victim).

15. *See People v. Shelson,* 150 Mich.App. 718, 389 N.W.2d 159, 162–63 (1986) (per curiam) (holding that the prosecutor was not disqualified to prosecute a defendant charged with arson where the prosecutor previously represented the defendant in a divorce case); *State v. Booher,* 54 Ohio App.3d 1, 560 N.E.2d 786, 800 (1988) (per curiam) (holding that the prosecutor was not disqualified to prosecute a defendant charged with aggravated murder of her husband where the prosecutor previously represented the defendant and victim because the prior representation was unrelated to the charged offense); Annotation, 42 A.L.R.5th 581 at §§ 4[b] and 6[b].

would be unprofessional misconduct.[16] "A lawyer who has formerly represented a client in a matter shall not thereafter ... use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known." Rule 1.9(a)(2); *see also* Mil. R. Evid. 502; Army Reg. 27–3, Legal Services: The Army Legal Assistance Program, para. 4–8(a) (21 Feb. 1996) [hereinafter Army Reg. 27–3] [17] (discussing attorney-client privilege).

In *Golston*, the defense made a specific allegation of a breach of attorney-client confidentiality. *Golston*, 53 M.J. at 62. The trial counsel denied the use of attorney-client confidential information and provided a public source for the information. *Id.* at 63. Unlike in *Golston*, the parties at appellant's trial did not raise CPT M's potential conflict of interest or breach of attorney-client confidentiality on the record and, thus, there was no inquiry into this matter by the military judge. Neither appellant nor Mrs. Wheeler has cited any specific attorney-client confidence that was used improperly by CPT M. Mrs. Wheeler did not testify at appellant's

trial and there is no evidence that CPT M "use[d], directly or indirectly, any confidence received" from Mrs. Wheeler to prosecute appellant. *Cote*, 11 M.J. at 894 (citing American Bar Association, Code of Professional Responsibility Disciplinary Rule (DR) 4–101(B) [18]); *see also Hustwit*, 33 M.J. at 614–15. The defense post-trial affidavits "consist[ ] instead of speculative or conclusory observations" and we reject the claim of breach of attorney-client confidentiality on that basis. *Ginn*, 47 M.J. at 248. We conclude that appellant has not established that CPT M's representation of Mrs. Wheeler concerning her separation agreement resulted in disclosures that were used to prosecute appellant.

### Duty to Disclose Prior Relationship

In *Golston*, our superior court determined that the trial counsel, who earlier had provided legal assistance to Mrs. Golston pertaining to a military police investigation of her for larceny, had a duty to "avoid even the appearance of wrongdoing in the attorney-client arena." *Golston*, 53 M.J. at 66 (citation omitted). Thus, when Mrs. Golston was called as a defense witness,[19] the trial counsel

---

16. *See Green*, 5 U.S.C.M.A. at 613–17, 18 C.M.R. at 237–41; *United States v. McKee*, 2 M.J. 981, 984 (A.C.M.R.1976).

17. Army Reg. 27–3, para. 4–8(a), states:

4–8. Attorney–client privilege
a. Communications between attorney and client are privileged. *See* AR 27–26. Those providing legal assistance will carefully guard the attorney-client relationship and protect the confidentiality of all privileged communications with their clients, as well as the confidentiality of other privileged information or documents that may be acquired. Privileged communications will be disclosed only in accordance with applicable law. If a client authorizes the disclosure of privileged matters, such authorization should be obtained in writing, and the attorney should keep a copy of the authorization.

18. DR 4–101(B) states:

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client.
(2) Use a confidence or secret of his client to the disadvantage of the client.
(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

19. Mrs. Golston was cross-examined by the assistant trial counsel, not her former counsel, about the very subject, a larceny investigated by the military police, for which she sought the trial counsel's advice. *Golston*, 53 M.J. at 62–63. The information regarding the larceny was a matter of public record. *Id.* at 63. As such, our superior court stated that it could be used to attack Mrs. Golston's credibility. *Id.* at 65–66; *see also* Richard H. Underwood & William H. Fortune, Trial Ethics § 14.3.2, at 391 (1988) (source of information may be former client so long as information is also public record) (citing Lowenthal, Successive Representation by Criminal Lawyers, 93 Yale L.J. 1, 23 (1983)). Although the cross-examination of a former client is fraught with peril, it is not prohibited. As the Second Circuit Court of Appeals has noted:

There is, in theory, no vice in the proposed questioning of a former client that springs from sources independent of the client. But, as a practical matter, when sources other than matters of public record are cited, they are substantially more difficult to verify—especially where, as here, counsel may well have received confidential information from the [former client] on a wide variety of matters over a long period of time—and the court's ability to protect the [former client's] privilege is proportionately weakened.

*United States v. James*, 708 F.2d 40, 45 (2d Cir. 1983).

failed to "apprise the trial judge" of the prior legal assistance relationship. *Id.* The *Golston* trial counsel failed in this duty "to avoid even the appearance of wrongdoing" when he failed to disclose his attorney-client relationship prior to Mrs. Golston's testimony. *Id.* Despite this failure, the trial counsel's actions did not "substantially prejudice [Specialist Golston's] right to a fair trial,"[20] and the findings and sentence were affirmed. *Id.* at 66–67.

Mrs. Wheeler was not listed on any witness list and ultimately did not testify, and CPT M's prior attorney-client relationship with Mrs. Wheeler was not substantially related to appellant's court-martial charges. Nevertheless, trial counsel's better course under R.C.M. 901(d) at the outset of the trial would have been to disclose to the military judge the existence of the past attorney-client relationship because depending on how the facts developed at trial, it could have potentially constituted a "matter[ ] 'which might tend to disqualify' " CPT M.[21]

### Prejudice

■ Assuming *arguendo* that it was error for CPT M to act as assistant trial counsel, we will consider whether the failure of the trial defense counsel to object[22] to CPT M's participation as assistant trial counsel constituted plain error. " '[P]rosecutorial misconduct may be so exceptionally flagrant that it constitutes plain error, and is grounds for reversal even if the defendant did not

object to it.' " *United States v. Carter,* 236 F.3d 777, 783 (6th Cir.2001) (quoting *United States v. Carroll,* 26 F.3d 1380, 1385 n. 6 (6th Cir.1994)). "[T]he lack of defense objection is relevant to a determination of prejudice" because the lack of a defense objection is " 'some measure of the minimal impact' " of the prosecutor's participation. *United States v. Carpenter,* 51 M.J. 393, 396–97 (1999) (citations omitted) (discussing plain error in context of trial counsel's improper argument).

We conclude that there was no plain error. Even if CPT M was disqualified from acting as assistant trial counsel, his participation did not materially prejudice appellant's substantial rights. *See United States v. Powell,* 49 M.J. 460, 464–65 (1998). It did not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citations and inner quotation marks omitted).

### Conclusion

We find that CPT M did not commit prosecutorial misconduct and that CPT M did not cause prejudice to appellant or the military justice system.[23] *See Golston,* 53 M.J. at 66–67; *United States v. Smith,* 26 M.J. 152, 154 (C.M.A.1988). Nevertheless, we believe that "it would have been better from the public's point of view if [CPT M] had not participated in this case." *Havens,* 793 F.2d at 145. As Judge Gierke has warned, prosecutors need

---

**20.** *Golston,* 53 M.J. at 62.

**21.** *See Golston,* 53 M.J. at 66–67; *United States v. Murphy,* 50 M.J. 4, 10 (1998) (both holding that the military judge should settle conflict-of-interest issues on the record (citations omitted)); *cf. United States v. Davis,* 3 M.J. 430, 432–33 (C.M.A.1977) (holding that a perfunctory inquiry into conflict of interests or divisions of loyalty is unsatisfactory).

**22.** Appellant's affidavit indicates he was aware of Mrs. Wheeler's previous attorney-client relationship with CPT M. Captain M's affidavit states that he told appellant's trial defense counsel before trial of his prior attorney-client relationship with Mrs. Wheeler. No information has been submitted to the court contradicting these two statements of fact.

**23.** On several occasions, however, our superior court has found plain error for due process viola-

tions. *See United States v. Groce,* 3 M.J. 369, 371 (C.M.A.1977) (holding that appellant's failure to object was not waived where a court member was sleeping during instructions because the court member's conduct was "a denial of a fair trial or a violation of due process of law"); *Stringer,* 4 U.S.C.M.A. at 498–99, 16 C.M.R. at 72–73 (holding that a failure to object at trial does not waive a denial of a fair trial or a violation of due process of law); *United States v. Fowler,* 6 M.J. 501, 503 (A.F.C.M.R.1978) (holding that disqualification of trial counsel, who formed an attorney-client relationship with the accused on the same matter for which appellant was prosecuted, was not waived by a failure to object (citations omitted)); *Diaz,* 9 M.J. at 694 (holding that trial counsel's conflict of interest was not waived by a failure to object (citations omitted)). *But see United States v. Durnen,* 13 M.J. 690, 693 (N.M.C.M.R.1982) (holding "even if there had been a privileged communication and an attorney-client relationship [with trial counsel], the defense waived the issue").

to be "more sensitive to the potential for conflicts of interest arising from multiple military duties." *Golston,* 53 M.J. at 67 (Gierke, J., concurring).

### Absence of Evidence of Digital Penetration

There was no evidence that appellant digitally penetrated PVT M's vagina as alleged in Specification 2 of Charge I. Accordingly, we are required to except the words, "and digitally penetrating her vagina," from Specification 2 of Charge I, and we will reassess the sentence.

Appellant, a drill sergeant, engaged in sexual intercourse in the drill sergeant's latrine on three occasions with PVT M, and on a separate occasion with PFC A. Private M and PFC A were assigned to appellant's platoon and undergoing IET at the time of appellant's misconduct. Appellant also violated a general regulation by engaging in personal relationships with PVT M and PFC A. We are confident under these circumstances that the failure to except the words, "and digitally penetrating her vagina," from Specification 2 of Charge I did not prejudice appellant as to the approved sentence, which included suspension of two of the six years of adjudged confinement. UCMJ art. 59(a), 10 U.S.C. § 859(a).

We have reviewed the other matters raised by appellate defense counsel and those personally raised by appellant under *Grostefon* and find them to be without merit. The court affirms only so much of the finding of guilty of Specification 2 of Charge I as finds that appellant did, at Fort Leonard Wood, Missouri, between 1 April 1997 and 5 June 1997, with knowledge that PVT M was then an Initial Entry Training Soldier, violate a lawful general regulation, to wit: Fort Leonard Wood Regulation 350–12, paragraph 1–6, dated 22 January 1996, by wrongfully engaging in a personal relationship with the said PVT M, by having personal conversations with PVT M, by kissing her on numerous occasions and by touching her breasts, conduct and touching not necessary in the performance of official duties, in violation of Article 92, Uniform Code of Military Justice.

The remaining findings of guilty are affirmed. Reassessing the sentence based on the error noted and the entire record, and applying the criteria of *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the court affirms the approved sentence.

Senior Judge CANNER and Judge CARTER concur.